THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RICCARDO WHITE, Defendant-Appellant.

First District (3rd Division)    No. 79-1065

Opinion filed September 17, 1980.

James J. Doherty, Public Defender, of Chicago (Suzanne M. Xinos, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Joel A. Eisen-Stein, and Ann L. Benedek, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE SIMON delivered the opinion of the court.

The defendant was convicted of armed robbery in a jury trial at which the State presented the eyewitness identification testimony of the victim and the victim's wife. The defendant presented the testimony of four friends who said he had accompanied them to a party that night several miles away from the offense. We accept the jury's verdict. It was not prejudiced by the prosecutor's closing argument, and the defendant's allegation of juror misconduct was not sufficiently supported to warrant a new trial.

At 11:30 p.m. on August 10, 1976, Herman Burnett, accompanied at the time by his wife and brother-in-law, was robbed by two men on a CTA bus at 55th and Halsted in Chicago. As Burnett prepared to get off the bus, a man stuck a gun in Burnett's neck and told him to be still. A second man, without being told, then frisked Burnett, removing a watch and $150. This man, identified by Burnett as the defendant, ran off the bus when it reached 55th. Before the gunman stepped off the bus, he shot twice at Burnett. The first shot misfired, but the second hit Burnett in the hand as he dove to cover his wife.

Hugh Attaway, who ran a watermelon stand at 55th and Halsted, saw the bus pull up to the corner, but looked away when no one got off immediately. Attaway heard a shot, and turned back to the bus in time to see the gunman get off. Attaway chased him into a gangway but could not catch him. Attaway then returned to the scene and drove Burnett to Tabernacle Hospital.

That evening Burnett gave the police a description of the man who frisked him. After spending 4 days in the hospital, Burnett went to a restaurant on the evening of August 15. He spotted the defendant there and informed two police officers parked nearby in a beat car. The officers went inside with Burnett who pointed to the defendant. The

defendant approached the police officers when he saw he was being pointed out and asked what they wanted. He said that he had not done anything.

The officers asked Burnett if this was the man, and arrested the defendant when assured that he was. Questioned at the police station, the defendant said he did not know where he had been on the night of August 10. Mrs. Burnett later saw the defendant in a lineup and identified him as the robber.

The defendant was charged with attempt murder, armed robbery and two counts of aggravated battery. At trial, his fiancée and three friends testified that the defendant had been with them at the time of the robbery. August 10 had been the birthday party of White's employer. Their testimony was that after a get-together at work, the defendant returned home for supper, then went next door to a card party. He stayed there until 2 or 3 a.m. The defendant testified that he was at the party, was not riding a CTA bus and had never seen Burnett until arrested. Also, he denied robbing Burnett.

The jury found the defendant guilty only of armed robbery, and he was sentenced to a term of 10 to 20 years.

The defendant first challenges the verdict by raising the possibility of juror prejudice. At *voir dire*, all potential jurors were asked if they had ever been the victim of a crime. All those selected said no. Jury deliberations were held at a courthouse constructed in a way which made it easy to overhear the comments of the jurors while they were in the jury room. Defense counsel in his post-trial motion informed the trial judge that he had overheard the comment of an unidentified female member of the jury. He said that he had heard her "attesting how she had been grabbed by or mugged by a person and that she was choked and would never forget that face." Counsel did not, however, hear the entire narrative. He admitted that she might have been relating an experience that another person related to her by telling the jurors something that had happened to a friend of hers and what the friend had said. The defendant urges that this comment by a juror was especially prejudicial to him after the prosecutor in general terms argued to the jury that the victim of a crime would not forget the face of the assailant. Defense counsel did not relate what he had heard to the trial judge at the time the verdict was returned, but, as pointed out above, first raised the issue in defendant's post-trial motion filed several days after the verdict.

■■ Where a juror deceives or misleads a party by falsely testifying that she is unprejudiced or impartial and that fact is not discovered until after the verdict, a new trial will be ordered. (*People v. Ortiz* (1926), 320 Ill. 205, 213, 150 N.E. 708, 712; *People v. Oliver* (1977), 50 Ill. App. 3d 665, 673, 365 N.E.2d 618, 624.) The defendant would have a valid objection if the juror's comment referred to her own experience. In a case where

identity is a prime issue, a proper trial strategy would be to eliminate all potential jurors who had been crime victims through peremptory challenges. Then the jury would have to rely on general principles, such as the belief that a victim would not forget an assailant's face which the prosecutor properly argued to the jury. The jury would have no firsthand experience to bolster or erode the general principle. Had a juror here misled the defendant at the *voir dire*, there would be clear ground for concern.

But the record in this case does not establish any misrepresentation. In *Oliver*, just after the verdict was announced, the juror was heard to say that he had been a crime victim. The defense counsel immediately put him on the stand and established the juror's misrepresentation in open court by the juror's own testimony. As noted in *Oliver*, this showing of a disqualifying state of mind rendered a new trial necessary, for attacks upon the fairness and impartiality of a jury cannot be disposed of by the harmless error rule (*People v. Cole* (1973), 54 Ill. 2d 401, 411, 298 N.E.2d 705, 711). The *Oliver* rule has not been elaborated upon in subsequent cases.

■■ Defense counsel in this case did not poll the jury immediately after the verdict to determine who had made the remark he felt was offensive. Thus, when the issue was presented to the trial court in the post-trial motion, the meaning of the remark counsel claimed to have overheard was ambiguous. The trial court considered the possibility that the juror may have been relating her own experience, but pointed out that the juror might just as well have been relating the experience of someone else or might simply have been thinking out loud about a general belief that a victim would remember the appearance of an assailant. The mere suspicion of bias in a juror is insufficient to impeach a verdict (*People v. Coleman* (1977), 50 Ill. App. 3d 40, 43, 365 N.E.2d 246, 248), and to obtain support from the *Oliver* rule, the defendant had to establish more definitely than the record in this case does that the juror had misrepresented herself on *voir dire*. The decision to inquire further into post-trial allegations of juror prejudice is entrusted to the trial court's discretion. (*People v. Phelps* (1944), 388 Ill. 618, 624, 58 N.E.2d 615, 618.) Where there was no proof that any juror here misrepresented her own experiences, the trial court did not abuse its discretion in denying the motion for a new trial. *People v. Potts* (1949), 403 Ill. 398, 403, 86 N.E.2d 345, 347.

Defendant's two remaining contentions have no merit and require little discussion. He challenges the jury's verdict by arguing that the State did not prove him guilty beyond a reasonable doubt. He concedes, however, that the identification testimony of a single witness is sufficient to convict if based upon ample opportunity for observation. We believe that both Burnetts had ample opportunity to observe their assailants while on the bus. There was no indication that the bus was not well lighted. The

robbery shocked the Burnetts and focused their attention on the two men. The bus driver did not testify, but that was due to the admitted inability of the defendant and the CTA to ascertain who the driver had been.

■■ The defendant points to the strength of his alibi and the weaknesses and inconsistencies of the testimony for the State. Both the State and the defense presented plausible versions of the facts which might have been accurate. It was the jury's task to choose between them and determine the truth. Where the version it chose was not so improbable as to be incredible, we will not disturb the verdict. *People v. Catlett* (1971), 48 Ill. 2d 56, 64, 268 N.E.2d 378, 382; *People v. Price* (1979), 79 Ill. App. 3d 1112, 1118, 398 N.E.2d 1158, 1161; *People v. Baker* (1979), 78 Ill. App. 3d 411, 417, 396 N.E.2d 1174, 1180.

■■ The defendant contends that the prosecutor's closing argument exceeded the bounds of permissible comment by pointing out that no alibi was offered by defendant when he was arrested. The prosecutor argued that the alibi only came a year and a half later, at trial. This was not a comment on post-arrest silence, but rather upon the defendant's affirmative statement upon his arrest that he did not know where he had been at the time of the offense. The comment was a reasonable inference from the evidence. Where the defendant did not choose to remain silent under police questioning, the prosecutor was free to argue to the jury that his statement to police was a lie and that the alibi defense was a fabrication. Even if the argument was a comment on post-arrest silence of the kind banned by *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240, and *People v. Hooker* (1977), 54 Ill. App. 3d 53, 369 N.E.2d 147, the argument was an answer to defense counsel's contention that defendant's post-arrest silence made the alibi more, not less, credible. Where a defense counsel opens the door by arguing that certain inferences can be drawn from post-arrest silence, he invites a counterargument by the prosecutor and has no grounds for complaint.

The defendant received a fair trial. We affirm the judgment.

Judgment affirmed.

McNAMARA and RIZZI, JJ., concur.