**William A. ANDERSON, Petitioner,**

v.

**J. B. DYKES, Sheriff of Richmond County, Respondent.**

**Civ. A. No. CV181–010.**

United States District Court,
S. D. Georgia,
Augusta Division.

Oct. 15, 1981.

---

Theodore Worozbyt, Atlanta, Ga., for petitioner.

Robert C. Daniel, Jr., Sam B. Sibley, Jr., Augusta, Ga., for respondent.

## ORDER

BOWEN, District Judge.

On May 3, 1979, in Richmond County Superior Court, petitioner, a former sheriff of Richmond County, Georgia, was convicted on two counts of selling marijuana. Pursuant to 28 U.S.C. § 2254, and upon exhaustion of his state remedies, petitioner brought this action seeking issuance of a writ of habeas corpus. The facts pertinent to this petition may be succinctly stated as follows:

Petitioner came for trial before a jury on May 1, 1979. During the state's case in chief, substantial evidence was introduced against petitioner, including tape recordings of petitioner's conversations with state informants. In the defense case, petitioner, on direct examination, admitted the transactions in questions but claimed governmental entrapment. For purposes of discrediting the entrapment claim, the prosecution asked the following question on cross-examination: "Let me ask you this, you denied these transactions when Lieutenant Sanders arrested you there in Forrest Squires' apartment, didn't you?". Defense counsel immediately objected to this question and moved for a mistrial; petitioner made no response to the question.

Out of the presence of the jury, the court heard arguments of counsel on the motion for mistrial and then issued the following ruling from the bench: "I overrule the motion for a mistrial. I am going to instruct counsel not to pursue that line of interrogation any further and I am going to instruct the jury to disregard the question." When the jury returned to the courtroom, the court instructed:

Ladies and Gentlemen of the jury, I instruct you to disregard any question asked the witness about the statement that he purportedly made to Investigator

Sanders and any answer which he started to give and I instruct counsel not to pursue that line of questioning any further. No further evidence was adduced on the purported statement.

In this action, petitioner avers that the above-quoted question by the prosecution, when the state had made no prior showing in its case in chief that any statement had been made, violated petitioner's constitutional rights as enounced in *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); *Anderson v. Charles*, 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980); *Jenkins v. Anderson*, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980). The thrust of petitioner's argument, on the basis of the cited authority, is that the prosecutor's question either infringed on petitioner's fifth amendment right to remain silent or amounted to the introduction of a statement against the petitioner without a voluntariness determination.

■■■ It is well settled that "a criminal defendant who challenges the voluntariness of a confession made to officials and sought to be used against him at his trial has a due process right to a reliable determination that the confession was in fact voluntarily given." *Lego v. Twomey*, 404 U.S. 477, 478, 92 S.Ct. 619, 621, 30 L.Ed.2d 618 (1972); *see Wainwright v. Sykes*, 433 U.S. 72, 86, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977); *Jackson v. Denno*, 378 U.S. 368, 376–77, 84 S.Ct. 1774, 1780–81, 12 L.Ed.2d 908 (1964). Furthermore, an accused's involuntary statement may not be used in any way against him in a criminal trial. *Mincey v. Arizona*, 437 U.S. 385, 398, 98 S.Ct. 2408, 2416, 57 L.Ed.2d 290 (1978). This proscription on criminal evidentiary use of a defendant's involuntary statement extends to introduction of the statement for purposes of impeachment. *Id. See generally Jones v. State*, 243 Ga. 820, 256 S.E.2d 907 (1979); *Green v. State*, 154 Ga.App. 295, 267 S.E.2d 898 (1980). *But cf. Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971)

(Statements by an accused rendered inadmissible in government's case in chief because of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), procedural defects are admissible for impeachment if their trustworthiness satisfies legal standards).

■■■ In addition to and analytically separate from the voluntariness issue, a defendant's post-arrest *silence*, upon receiving the *Miranda* warnings, may not be used for impeachment purposes. *Doyle v. Ohio*, 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976). While such use of an accused's invocation of his right to remain silent "would be fundamentally unfair and a deprivation of due process," *id.* at 618, 96 S.Ct. at 2245, no fifth amendment violation is occasioned by the use of defendant's *prearrest* silence. *Jenkins v. Anderson*, 447 U.S. 231, 240–41, 100 S.Ct. 2124, 2130–31, 65 L.Ed.2d 86 (1980). Moreover, post-arrest statements which are inconsistent with a defendant's direct testimony may be inquired into without running afoul of *Doyle*, since "[s]uch questioning makes no unfair use of silence, because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent." *Anderson v. Charles*, 447 U.S. 404, 408, 100 S.Ct. 2180, 2182, 65 L.Ed.2d 222 (1980).

■■■ In sum, two main principles emerge which delimit the available evidentiary avenues a prosecutor may take in seeking to impeach the direct testimony of an accused: (1) no use whatsoever may be made of a defendant's involuntary statement; and (2) the state may not comment through impeachment or otherwise, upon a defendant's post-arrest silence. Subsumed within these principles are several qualifying tenets: (1) a defendant's statement may be used for impeachment, despite *Miranda* procedural defects, if the trustworthiness of the statement satisfies legal standards; (2) a defendant's silence prior to arrest may be commented on and utilized for impeachment; and (3) a defendant's voluntary post-arrest statement, which, in light of defendant's direct testimony, amounts to a prior

inconsistent statement, may be used for impeachment purposes.

■ It should be emphatically mentioned, however, that in the present case, *no statement was received in evidence.* Instead, all that occurred before the jury was the prosecutor's unanswered question concerning a purported exculpatory statement made by petitioner after his arrest. Assuming the requirement of a voluntariness determination applies to exculpatory statements, the accused's right to such a determination is triggered only upon some contemporaneous challenge to the use of the statement. *See Wainwright v. Sykes,* 433 U.S. at 86, 97 S.Ct. at 2506. Here, defense counsel objected immediately following the question and the court, in response, excluded any further comment on the purported statement. Thus, no evidentiary use was ever made of petitioner's purported statement which would have necessitated a voluntariness determination.

Similarly, the mere question on the averred post-arrest prior inconsistent statement did not constitute an impermissible use of an involuntary statement in violation of *Mincey v. Arizona.* In *Mincey,* defendant's involuntary post-arrest statements were introduced in evidence in an attempt to impeach defendant's testimony. During petitioner's trial, however, the statement at issue was never admitted in evidence. Clearly, the comments and questions of counsel are not evidence. Hence, no *Mincey*-type infraction occurred.

Whether the state's question, although not evidence, amounted to an impermissible comment on petitioner's right to remain silent, in violation of *Doyle v. Ohio,* presents a separate issue. In *Doyle,* the prosecutor sought to impeach defendant's exculpatory story, told for the first time at trial, by cross-examining about defendant's failure to have told the story after receiving *Miranda* warnings. In reversing the trial court, which had permitted a full line of inquiry on defendant's post-arrest silence, the Supreme Court held that such cross-examination for impeachment purposes violated the due process clause of the fourteenth amendment. 426 U.S. at 619, 96 S.Ct. at 2245.

In contrast to the situation in *Doyle,* the prosecutor in petitioner's trial did not inquire about petitioner's *failure* to make a statement after arrest, but rather sought to elicit testimony concerning the *making* of a post-arrest statement. The question contained no comment or allusion to the petitioner's right to remain silent; its singular focus was on a purported prior statement, not silence, which was inconsistent with petitioner's entrapment defense. In this respect, then, the question is akin to the cross-examination approved in *Anderson v. Charles, supra,* in the sense that it merely inquired into a prior inconsistent statement. *See* 447 U.S. at 408, 100 S.Ct. at 2182.

A further distinction between petitioner's trial and the circumstances in *Doyle* is that, unlike the prosecutor in *Doyle,* the state in the present case was not permitted to pursue any questioning concerning the purported statement and, as a result, petitioner gave no testimony pertaining to such statement. Thus, whether petitioner, in response to the prosecutor's question, would have testified that he remained silent following arrest is purely conjectural. Such conjecture does not rise to the level of an impermissible comment on defendant's right to remain silent.

In considering a petition for a writ of habeas corpus by a person in custody pursuant to a state court judgment, a federal court has a limited scope of review. An initial limitation is presented by 28 U.S.C. § 2254(d) which requires federal court deference to factual determinations by all state courts. *See Sumner v. Mata,* 449 U.S. 539, 543, 101 S.Ct. 764, 767, 66 L.Ed.2d 722 (1981). In enacting section 2254(d), Congress established "that the findings made by the state court system 'shall be presumed to be correct' unless one of the seven conditions specifically set forth in § 2254(d) was found to exist by the federal habeas court." *Id.* 449 U.S. at 550, 101 S.Ct. at 771.

Here, the trial judge, in denying defense counsel's motion for a mistrial, made an

implicit finding that the prosecutor's question caused no significant adverse prejudice to petitioner. Since this finding is imbued with a presumption of correctness, and, in view of petitioner's statement that no federal habeas court factual hearing is necessary, the Court finds that the implicit factual determination by the state trial court shall not be upset. As the Supreme Court noted:

> State judges as well as federal judges swear allegiance to the Constitution of the United States, and there is no reason to think that because of their frequent differences of opinions as to how that document should be interpreted that all are not doing their mortal best to discharge their oath of office.

*Id.* 449 U.S. at 549, 101 S.Ct. at 770.

A further limitation to the scope of review of a federal habeas court is presented by the well-settled axiom that "[a] state prisoner can win a federal writ of habeas corpus only upon a showing that the State participated in the denial of a fundamental right protected by the Fourteenth Amendment." *Cuyler v. Sullivan,* 446 U.S. 335, 342–43, 100 S.Ct. 1708, 1714–1715, 64 L.Ed.2d 333 (1980); *see Rose v. Hodges,* 423 U.S. 19, 21, 96 S.Ct. 175, 177, 46 L.Ed.2d 162 (1975); *Townsend v. Sain,* 372 U.S. 293, 312, 83 S.Ct. 745, 756, 9 L.Ed.2d 770 (1963). As the foregoing discussion reveals, the question by the prosecutor at petitioner's trial and the trial judge's refusal to grant a mistrial did not constitute a denial of petitioner's fundamental rights protected by the fourteenth amendment. Accordingly, the petition is DENIED.