**UNITED STATES ex rel. Riccardo WHITE, Petitioner,**

v.

**Richard DeROBERTIS, Warden, Respondent.**

No. 81 C 5418.

United States District Court,
N.D. Illinois, E.D.

Dec. 9, 1982.

Riccardo White, pro se.

Tyrone C. Fahner, Atty. Gen. by Rodolfo Garcia, Asst. Atty. Gen., Chicago, Ill., for respondent.

ORDER

BUA, District Judge.

Riccardo White filed this petition for a writ of habeas corpus to challenge his April 28, 1978 conviction on a charge of armed robbery in the Circuit Court of Cook County, Illinois. Petitioner claims 1) that the state prosecutor's rebuttal argument in closing was constitutionally improper in that it included an impermissible comment on petitioner's post-arrest silence, 2) that petitioner was denied his right to an impartial jury, and 3) that the state failed to prove petitioner's guilt beyond a reasonable doubt. Each of these claims was timely raised in the trial court and on appeal to the Illinois Supreme Court. Petitioner's conviction by a jury was affirmed on appeal. *People v. White,* 88 Ill.App.3d 788, 43 Ill. Dec. 949, 410 N.E.2d 1082, (1st Dist.1980). His petition for leave to appeal to the Illinois Supreme Court was denied. Petitioner has exhausted all state remedies.

The case is now before this Court on respondent's motion to dismiss. That motion is granted, and the petition for a writ of habeas corpus is denied.

I.

At 11:30 p.m. on August 10, 1976, Herman Burnett and his wife, passengers on a Chicago Transit Authority bus, were assaulted by two males. According to Burnett, one assailant placed a gun to Burnett's head and threatened to fire it. The other assailant approached Burnett and patted him down. The Burnetts later identified the petitioner as the second assailant. The pat-down produced Burnett's watch and $150 which Burnett had hidden in his socks. The unarmed assailant then ran off the bus through the rear door. As the assailant with the gun followed, he stopped, pointed the gun at Burnett and pulled the trigger twice. After initially misfiring, the gun fired a bullet which struck Burnett's hand as he attempted to cover his wife.

Shortly after the incident, Burnett, recovering at a local hospital, gave the investigating police officers descriptions of both

assailants. On the police report, White was described as "... a male Negro, 19 to 20 years old, approximately five foot six, 140 pounds, wearing blue and orange shirt, light grey pants."

Four days after the robbery, on the day on which Burnett was released from the hospital, he saw petitioner in a local restaurant. Burnett immediately contacted two police officers parked near the restaurant, informed them of the robbery and told them that one of the assailants was inside the restaurant. The officers proceeded to arrest Riccardo White and give him *Miranda* warnings, *Miranda v. Arizona*, 384 U.S. 436, 467–473, 86 S.Ct. 1602, 1624–1627, 16 L.Ed.2d 694 (1966). White was subsequently identified by Mrs. Burnett in a police line-up.

At trial, White testified on his own behalf. His defense was an alibi. White testified that on the night in question he had been at a party held at a neighbor's home which began late in the evening of August 10, 1976 and lasted into the early morning hours of August 11. Four friends and neighbors of White testified that he was present at the party, thus corroborating White's story.

## II.

## A.

During the state's case-in-chief, one of the arresting officers testified that after he gave White his *Miranda* warnings, he asked White where he was on the night of August 10. According to the arresting officer, White responded that he did not know. On direct examination, White stated that at the time of his arrest he was not "asked anything relative to a robbery and a shooting that had occurred on the morning of August 11th[.]" In fact, White claimed that he did not become aware of the specific date on which the criminal incident occurred until "three weeks to a month [after his arrest.]" The petitioner reiterated this testimony during cross examination.

During closing arguments, defense counsel made the following comments about White's arrest and post-arrest behavior.

"At the time Riccardo White was arrested, he didn't even know what the date was that he was accused of having robbed somebody, and then it takes some time to refresh, and after you learn what date it was to go back and to remember what you were doing."

During the rebuttal argument the following colloquy occurred, part of which is the basis for White's claim that the prosecutor impermissibly commented on his post-arrest silence. (Pet. at 8–9):

PROSECUTOR: Now another question. If you are asked what you were doing on August 11, 1976, five days after that date, on the 16th of August, and you know that you are being arrested for something that occurred five days previously, you are going to be damn sure you are going to remember what happened five days earlier when your liberty depends on it.

At that time, he was in custody and arrested. They asked him what happened on August 11th. Your mind is going to think pretty quickly about what you were doing if you are not guilty. All of a sudden, we have an alibi a year and a half later. That is what I call convenient.

DEFENSE COUNSEL: Objection.

PROSECUTOR: That is what I call a "weak defense."

DEFENSE COUNSEL: Objection to "a year and a half later.,"

TRIAL COURT: Overruled. Each counsel may argue from the evidence.

## B.

It is well settled that a defendant's post-arrest *silence*, following receipt by the defendant of *Miranda* warnings, may not be used for impeachment purposes. *Doyle v. Ohio*, 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976). It is also true, however, that a prosecutor may comment upon a defendant's post-arrest statements which are inconsistent with the defendant's direct testimony at trial. Such commentary presents no problem of unfair

use of silence, "because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent." *Anderson v. Charles,* 447 U.S. 404, 408, 100 S.Ct. 2180, 2182, 65 L.Ed.2d 222 (1980). Thus, although the general rule is that prosecutorial use of post-arrest silence is strictly prohibited, "a defendant's voluntary post-arrest statement, which in light of defendant's direct testimony, amounts to a prior inconsistent statement, may be used for impeachment purposes." *Anderson v. Dykes,* 524 F.Supp. 101, 103–104 (S.D.Ga. 1981).

The above statement of the law indicates that the issue in this case is the following: 1) whether petitioner's post-arrest assertion that he did not know where he was on the night of the crime, amounts to a prior statement inconsistent with his alibi testimony at trial, or 2) whether petitioner's post-arrest comment was not a "statement" at all, but rather amounted to the functional equivalent of silence, thus rendering the prosecutor's commentary fundamentally unfair. The Court believes that petitioner's statement is properly characterized as a prior-inconsistent statement, thus rendering the prosecutor's commentary fully appropriate.

The problem in this case is the ambiguity of the words "I don't know." It could be argued that this response conveyed no substantive content and thus cannot now be characterized as a "story" inconsistent with petitioner's alibi defense related at trial. This argument is premised on the obvious observation that an accused may utter several words or even sentences after receiving *Miranda* warnings and nonetheless properly be required to be treated at trial as having remained "silent" in reliance on his assured right to do so. For example, in *Doyle* itself, one defendant made several "statements" upon his arrest. When approached by the arresting officers, the defendant asked "[W]hat's this all about?" 426 U.S., at 615, n. 5, 96 S.Ct., at 2247, n. 5, and when told why he was being arrested, he exclaimed, "You got to be crazy," or "I don't know what you are talking about." *Id.,* at 622–623, n. 4, 96 S.Ct. at 2246–2247, n. 4 (Ste-

vens, J., dissenting). Despite this verbal outburst, "[b]oth the Court and the dissent in *Doyle* analyzed the due process question as if both defendants had remained silent." *Anderson v. Charles,* 447 U.S., at 407, n. 2, 100 S.Ct., at 2182, n. 2.

In *Anderson,* it was found that the above quoted exclamation was qualitatively different from the situation presented on the facts before the Court. The petitioner in *Anderson* had, at the time of his arrest, offered one explanation for how he had come to possess the automobile of a murder victim, and subsequently offered a second, presumably less incriminating explanation at trial. The Supreme Court held that petitioner had been properly cross examined regarding his post-arrest statements. The Court rejected petitioner's assertion that his case was governed by the prohibition of *Doyle.* In a *per curiam* opinion, it was explained that,

> *Doyle* bars the use against a criminal defendant of silence maintained after receipt of governmental assurances. But *Doyle* does not apply to cross examination that merely inquires into prior inconsistent statements. Such questioning makes no unfair use of silence, because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all.

447 U.S., at 408, 100 S.Ct., at 2182.

The question in the instant case thus boils down to whether petitioner's post-arrest assertion that he did not know where he was on the night of the crime is more like the statements made by the defendant in *Doyle* or more like those statements made by the defendant in *Anderson v. Charles.* Although this is a close case, the Court believes that *Anderson* controls its decision. The key distinction is that in *Doyle* nothing spoken by the accused after his arrest contradicted his testimony at trial. In contrast, in this case and in *Anderson,* the substance of the accused's post-arrest silence was in direct conflict with his

trial testimony. That which White said he did not know at the time of his arrest, he claimed to know in intimate detail when called to the stand. The prosecutor's commentary thus was not directed at any failure on the part of petitioner to make a post-arrest statement, but rather emphasized a statement that petitioner in fact made. His focus was on petitioner's prior statement, not silence, which contradicted his alibi defense. *Cf. Anderson v. Dykes,* 524 F.Supp. 101, 104 (S.D.Ga.1981). In such a case the unfairness emphasized in *Doyle* is simply not present, and thus its prohibition is inapplicable. As the Court stated in *Anderson v. Charles,*

> Each of two inconsistent descriptions of events may be said to involve 'silence' insofar as it omits facts included in the other version. But *Doyle* does not require any such formalistic understanding of 'silence,' and we find no reason to adopt such a view in this case.

427 U.S. 409.

### III.

Defendant's second challenge to the verdict against him is based on his allegation of juror prejudice. The facts on which this charge is based are stated in the Illinois appellate court's opinion as follows:

> At voir dire, all potential jurors were asked if they had ever been the victim of a crime. All those selected said no. Jury deliberations were held at a courthouse constructed in a way which made it easy to overhear the comments of the jurors while they were in the jury room. Defense counsel in his post-trial motion informed the trial judge that he had overheard the comment of an unidentified female member of the jury. He said that he had heard her "attesting how she had been grabbed by or mugged by a person and that she was choked and she would never forget that face." Counsel did not, however, hear the entire narrative. He admitted that she might have been relating an experience that another person related to her by telling the jurors something that had happened to a friend of hers and what the friend had said. The

defendant urges that this comment by a juror was especially prejudicial to him after the prosecutor in general terms argued to the jury that the victim of a crime would not forget the face of the assailant. Defense counsel did not relate what he had heard to the trial judge at the time the verdict was returned, but, as pointed out above, first raised the issue in defendant's post-trial motion filed several days after the verdict.

43 Ill.Dec. at 951, 410 N.E.2d at 1084.

"The constitutional standard of fairness requires that a defendant have 'a panel of impartial, "indifferent" jurors.' " *Murphy v. Florida,* 421 U.S. 794, 799, 95 S.Ct. 2031, 2035, 44 L.Ed.2d 589 (1975), *quoting Irvin v. Dowd,* 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961); *Haney v. Rose,* 642 F.2d 1055, 1059 (6th Cir.1981). As the Illinois appellate court noted, in a case such as this, where identity is a prime issue, trial strategy would be likely to dictate the elimination, on *voir dire,* of potential jurors who had at one time been crime victims. *See* 43 Ill.Dec. at 951, 410 N.E.2d at 1084. It is therefore reasonable to assume that a juror who had deliberately misled defense counsel on *voir dire* as to this aspect of her background might not be considered impartial in the context of this case. The Illinois Appellate Court specifically found, however, that "the record in this case does not establish any misrepresentation." 43 Ill. Dec. at 951, 410 N.E.2d 1084. The Court determined instead that the juror's alleged comments were, at most, "ambiguous." These state court findings are entitled to a presumption of correctness especially where, as here, they are based on the same record now before this Court. 28 U.S.C. § 2254(d); *Sumner v. Mata,* 449 U.S. 539, 547, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981); *United States ex rel. Jones v. Franzen,* 676 F.2d 261, (7th Cir.1982). This Court's only inquiry, therefore, is whether the state's findings "are fairly supported by the record." This Court believes that they are. Since it is also this Court's belief that those findings preclude petitioner's claim of partiality, that claim must be dismissed.

## IV.

White's final contention is that his guilt was not proved beyond a reasonable doubt. This claim is without merit. As has already been stated, immediately following the incident, both Mr. and Mrs. Burnett gave the investigating police officers descriptions of both assailants and told them that they would be able to positively identify the assailants. Mr. Burnett identified Riccardo White as one of the assailants under circumstances which were objective and conducive to a proper identification. Mrs. Burnett subsequently identified Riccardo White in a police lineup. Finally, White's alibi witnesses were sufficiently discredited during cross examination. Viewing all the evidence in the light most favorable to the prosecution, this Court believes that any jury rationally could have found petitioner guilty beyond a reasonable doubt of the crime of armed robbery. *See* *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

For the foregoing reasons, the petition for a writ of habeas corpus is denied in all respects and summary judgment is entered in favor of the respondent.

IT IS SO ORDERED.