THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RICHARD A. JONES, Defendant-Appellant.

Fourth District   No. 17378

Opinion filed August 25, 1982.

Daniel D. Yuhas and Don L. Johnson, both of State Appellate Defender's Office, of Springfield, for appellant.

Edmond H. Rees, State's Attorney, of Carlinville (Robert J. Biderman and James K. Horstman, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WEBBER delivered the opinion of the court:

Defendant, Richard A. Jones, was charged by a nine-count information with attempt (murder) (Ill. Rev. Stat. 1979, ch. 38, par. 9—1(a)(1)), home invasion (Ill. Rev. Stat. 1979, ch. 38, par. 12—11), burglary (Ill. Rev. Stat. 1979, ch. 38, par. 19—1), armed robbery (Ill. Rev. Stat. 1979, ch. 38, par. 18—2(a)), robbery (Ill. Rev. Stat. 1979, ch. 38, par. 18—1), aggravated battery (Ill. Rev. Stat. 1979, ch. 38, par. 12—4(b)(1)), armed violence (Ill. Rev. Stat. 1979, ch. 38, par. 33A—2), and theft over $150 (Ill. Rev. Stat. 1979, ch. 38, par. 16—1(e)(1)). Defendant was tried to a jury which found him guilty of all the offenses as alleged in the information.

He was then sentenced to 50-year terms for attempt (murder), home invasion, armed robbery, and armed violence. He was also sentenced to 10 years' imprisonment for aggravated battery, 12 years' imprisonment for burglary, and 8 years' imprisonment for theft. All terms were to be concurrent.

Defendant alleges six instances of error: (1) error in allowing the prosecution to introduce testimony regarding blood found on defendant's tee shirt; (2) error in allowing the chief investigating officer, a State's witness, to remain at counsel table with the prosecutor throughout the trial and then allowing him to be recalled as a witness; (3) improper comments by the prosecutor during closing argument; (4) improper cross-examination of the defendant by the prosecutor; (5) error in admitting statements made by the victim as an exception to the hearsay rule; and (6) error in sentencing.

Although defendant has raised numerous issues for review, a detailed recitation of the facts is unnecessary. The trial lasted more than

a week with numerous witnesses testifying on both sides. Therefore, the factual background will merely be highlighted with additional facts provided as necessary to the disposition of each issue.

On February 27, 1981, Glen Mabus was alone in his rural Carlinville home. While working in the basement he heard someone enter the house and, thinking it was his wife, went upstairs. He observed a car in the driveway of his home which he described as a late model, light blue or bluish-green, Chevrolet. Mabus returned to his house where he encountered a black male, with a handgun, in his bedroom. The assailant took money from Mabus and then forced him to the basement of his house. Mabus was forced to sit in a chair and the assailant shot him in the eye. Mabus also testified that numerous items from his house were missing following this attack. Although Mabus was somewhat unsure of his assailant's identification, he did identify defendant as his attacker.

Defendant was arrested by the Macoupin County Sheriff's Department shortly after the incident. When he was arrested several of the items that had been taken from the Mabus home were found nearby. The car defendant was apparently driving at the time of his arrest was a green late model Chevrolet. On the day following defendant's arrest police found a .22-caliber Colt automatic pistol in Gleason's Pond, which was near the area where defendant was arrested. Police also found an empty .22-caliber shell casing in the basement of Mabus' residence. This shell casing was identified by a forensic scientist as having been fired from the handgun which was found in Gleason's Pond.

Several witnesses testified that they had seen a bluish-green or green late model Chevrolet at the Mabus residence at approximately the time of Mabus' attack. Other witnesses testified that this car belonged to Stanley Huddleston, a co-worker of defendant. Huddleston testified that he had loaned defendant his car that day.

Barbara Grizzle, the companion of the defendant on the day of the shooting, testified that defendant had displayed a gun to her earlier in the day while they were drinking together. She believed that the handgun found in Gleason's Pond was the same gun defendant had shown her.

Defendant's theory of the case was that he had not been anywhere near the Mabus residence at the time of the incident. Defendant produced numerous witnesses to substantiate this theory. He also contended he was the target of a police conspiracy.

Defendant contends that the testimony of Debra Fesser, a forensic scientist for the Department of Law Enforcement, was not rele-

vant and therefore should not have been admitted. Fesser testified that she found blood on the front of a tank-top undershirt worn by defendant. However, she was unable to determine whether the blood was animal or human. Defense counsel objected to the testimony contending that the prosecution was first required to establish whether the blood was human or animal. The trial court overruled defendant's objection.

Defendant contends in this court that the relevance of the blood found on his clothing depended exclusively upon the unproved assumption that the bloodstains were made recently and that the blood was that of Glen Mabus. He contends that this error was exacerbated by a noticeable lack of corroborative evidence to establish that the blood was human and that it came from the victim. Finally he argues that although a number of State witnesses testified that they saw defendant during the day, none of them testified as to the existence of blood on his clothing.

It is axiomatic that the general test for the admissibility of evidence is its relevance. Evidence is admissible where it fairly tends to prove the particular offense charged. Any circumstances which tend to make the proposition at issue more or less probable may be put into evidence. Evidence is therefore relevant where the fact or circumstance offered tends to prove or disprove a disputed fact or to render the matter at issue more or less probable. (*People v. Currie* (1980), 84 Ill. App. 3d 1056, 405 N.E.2d 1142.) However, where the relevance of evidence depends on unproved assumptions it is inadmissible. *People v. Newbury* (1972), 53 Ill. 2d 228, 290 N.E.2d 592.

The determination of whether evidence is relevant is a matter for the sound discretion of the trial court. The trial court's decision will not be disturbed on review if there is no abuse of discretion to the prejudice of the defendant and where the record establishes a sufficient basis for the trial court's decision. (*Currie.*) Even where there is error, if the evidence of guilt is overwhelming, *i.e.*, it is so convincing that the jury would have convicted even if the irrelevant evidence had been excluded, reversal is not required. *Newbury.*

Defendant contends that the evidence of blood on his tee shirt is irrelevant since it rests on the unproved assumptions that it was human blood and that the blood came from the victim. We do not agree that the relevance of the existence of blood on his undershirt rests on such unproved assumptions.

Defendant relies on *Newbury,* in which the disputed evidence was a photograph of the defendant which had been found in the victim's bedroom. The photograph had been torn. The prosecution argued that

the torn photograph was relevant because the single fact that it was torn would allow the jury to infer that the victim tore the picture, that she had done so shortly before her death, and that her reason for so doing was a disagreement with the accused which, in turn, would suggest a motive for her killing. The supreme court rejected the photo. The court found the problem with the photo to be that its relevance depended upon unproved assumptions which resulted in a chain of inferences which had no independent proof.

■ We agree with the People that *Newbury* does not prohibit a party from establishing the relevance of evidence by means of inference. Rather, we read that case as holding only that relevance cannot be established by means of inferences which have no foundation in the evidence and which amount to no more than unproved assumptions. In the instant case the inference that the blood found on defendant's tee shirt was the victim's had some basis in the evidence.

In *People v. Preston* (1930), 341 Ill. 407, 173 N.E. 383, witnesses testified they found large bloodstains in the area of a murder on the day following. The defendant objected to the testimony on the grounds that it constituted the conclusions of nonexpert witnesses. The trial court overruled the objection and the supreme court held that the court was correct in admitting the testimony even though there was no testimony or other proof that the stains were bloodstains, that they were human blood, or that they derived from the victim. The court stated that the question was whether the evidence was competent and went on to hold that nonexperts may testify to the existence of blood. The weight to be given that testimony then becomes a jury question.

Unlike the lay testimony in *Preston*, an expert witness here testified to the presence of the blood on the tee shirt. As in *Preston*, there was no testimony that the blood was human rather than animal. However, in light of *Preston*, this is not fatally defective. While it is true that defendant was employed at a meat packing plant, there was no testimony that he worked that day. Moreover, witnesses did testify that the defendant had been seen earlier that day and they did not testify to the existence of bloodstains on his clothing at those times.

■ The evidence was relevant in that it tended to make more probable the fact that the defendant was indeed the individual who shot the victim at close range. The weight to be given the testimony was then a question for the jury. We determine that the trial court's decision was not an abuse of discretion to the prejudice of the defendant since the evidence against him was overwhelming.

Defendant next contends that error was committed when the trial

court exempted Detective Zirkelbach, the chief investigating officer, from a motion to exclude witnesses. Defendant argues that he was prejudiced since Zirkelbach's testimony upon recall amounted to unfair corroboration of the State's theory of the case and of the testimony that was heard between the two occasions on which he took the stand. He urges that Zirkelbach's presence, and subsequent testimony, served merely to strengthen the weaknesses in the State's case. Thus, defendant argues, the trial court abused its discretion.

It is well settled that it is within the trial court's discretion to permit a material witness to remain in the courtroom to assist the State's Attorney. (*People v. Leemon* (1977), 66 Ill. 2d 170, 361 N.E.2d 573.) This rule extends to police officers. (*People v. Miller* (1962), 26 Ill. 2d 305, 186 N.E.2d 317; *Leemon.*) Absent a showing of prejudice by the defendant, no abuse of discretion will be found in allowing a material witness to remain in the courtroom. Absent a showing of abuse of discretion there is no error. *People v. Carter* (1962), 24 Ill. 2d 413, 182 N.E.2d 197.

In the instant case the defendant has failed to show prejudice, thereby establishing an abuse of discretion. In *Miller* a police officer was allowed to stay in the courtroom as an exception to a granted motion to exclude witnesses. The officer was present during the testimony of the complaining witness. Defendant argued prejudice on appeal. In affirming the conviction, the supreme court stated that an opportunity to hear testimony was not enough to show prejudice. The court went on to state that to adopt such a theory would be to adopt a rule allowing exclusion of all witnesses as a matter of right.

Defendant's contention that he was prejudiced because Zirkelbach's testimony was unfairly corroborative is without merit. In *People v. Chennault* (1962), 24 Ill. 2d 185, 181 N.E.2d 74, a police officer was allowed to remain in the courtroom and then to give corroborative testimony after a second police officer had testified. There the supreme court stated that no prejudice had been shown and therefore there was no abuse of discretion.

■ Defendant has failed to show prejudice; therefore, there was no abuse of discretion in allowing Zirkelbach to remain at counsel table. No error occurred.

We turn now to an allegation of error which, regrettably, is reaching epidemic proportions; that of improper prosecutorial comment during closing argument. Persistently risking this error flies in the fact of logic and understanding. However, we are faced constantly with examples of it. As we have previously intimated, perhaps only a *per se* rule will be curative.

Defendant argues that there were three instances of error in the prosecutor's closing argument. He urges that it was error for the prosecutor to argue that it does not create a reasonable doubt to take the stand and deny committing the crime, thereby shifting the burden of proof; that the prosecutor's comments suggesting that the jurors would not be safe and secure in their homes if the defendant were not convicted was improper; and, that the prosecutor impermissibly suggested that in order to believe the defense witnesses, the jury must find that each of the State's witnesses was lying. We will examine each of these allegations of error individually.

The prosecutor stated in his closing argument that it does not create a reasonable doubt to take the stand and deny committing the crime. Defense counsel objected; however, the trial court overruled the objection. The People urge that the comment was a permissible reference to the strength of the State's case.

A prosecutor may not remark that a defendant has a burden of creating a reasonable doubt and that a defendant's evidence does not create such a doubt. The burden of proof never shifts. Where prosecutorial comments destroy the presumption of innocence and impose a heavier burden on the defendant than does the law, reversal is required. (*People v. Weinstein* (1966), 35 Ill. 2d 467, 220 N.E.2d 432.) We do not believe that the prosecutor's comments in this regard rose to that level.

Improper comments are not a ground for reversal unless they constitute a material factor in the conviction, or unless they result in substantial prejudice to the defendant. The test is whether the jury would have reached a contrary verdict had the improper argument not been made. This court must look to the content, in relation to the evidence, and the effect of the argument on the rights of the accused to a fair and impartial trial. *People v. Witted* (1979), 79 Ill. App. 3d 156, 398 N.E.2d 68.

■ The prosecutor's comments in the instant case did not result in substantial prejudice to the defendant as did those in *Weinstein*, which were repeated assertions that the burden rested with defendant. Nor can it be said that they constituted a material factor in the conviction. The evidence against the defendant was overwhelming. A jury could not have reached a contrary verdict had the argument not been made, even assuming, *arguendo*, that the argument was improper.

As to the "safe and secure" argument by the prosecutor, defendant argues that the error committed by the prosecutor was particularly egregious because defendant was charged with the offense of

home invasion. He urges that the prosecutor's statements were improper since they were made solely to inflame the passions, or arouse the prejudices, of the jury. He also argues that the prosecutor's comment constituted an expression of his own opinion and was therefore improper.

It is proper for the prosecutor to dwell on the evil results of crime and to urge the fearless administration of the law in his closing argument. Where argument is based on the facts in evidence, and the inferences which may be drawn therefrom, the argument is proper. (*People v. Halteman* (1956), 10 Ill. 2d 74, 139 N.E.2d 286.) While the prosecutor may make such comments, it is improper for the prosecutor to make statements which are calculated solely to inflame the passions and prejudices of the jury. (*Witted.*) The corollary to this latter rule forbids the prosecutor from stating his own opinion as to the guilt or innocence of a defendant. *People v. Bitakis* (1972), 8 Ill. App. 3d 103, 289 N.E.2d 256.

In the instant case the prosecutor stated that if residents of the county were to be safe in their homes, the case required that the jury return verdicts of guilty. He argued that to do otherwise would be to say that all of the police officers who testified were liars in an attempt to frame the defendant in this case. In the context of the entire record, the message of the prosecutor is quite clear. The prosecutor was suggesting the evil result which would arise if the defendant were released. This is permissible comment. (*People v. Balls* (1981), 95 Ill. App. 3d 70, 419 N.E.2d 571; *People v. VanZile* (1977), 48 Ill. App. 3d 972, 363 N.E.2d 429.) No error occurred.

The defendant next contends that the prosecutor committed reversible error in his closing argument by informing the jury that in order to believe the defense witnesses, they must find that each of the State's witnesses was lying. While the People agree that it is generally error for the prosecutor so to inform the jurors, they urge that no such statement appeared in the instant case.

The defense theory throughout the case was that of conspiracy. It appears that the prosecutor was merely attempting to summarize that theory in his closing argument. Moreover, defense counsel argued that some of the State's witnesses had been less than truthful on the stand.

The general rule is that when a prosecutor tells a jury that they must find each of the State's witnesses was lying in order to believe the defendant's case this is such a misstatement of the law as to prejudice the defendant and deny him a fair trial. (*People v. Cole* (1980), 80 Ill. App. 3d 1105, 400 N.E.2d 931.) However, such an assertion is

only improper if it is not founded in the evidence. (*Cole.*) Thus, where prosecutorial comments can be characterized as a discussion on the credibility of the defendant and the witnesses, based on the testimony or the reasonable inferences which can be drawn therefrom, such comments are permissible. *People v. Childs* (1981), 101 Ill. App. 3d 374, 428 N.E.2d 185.

In the instant case, defendant testified on cross-examination that many, if not all, of the State's witnesses were in fact lying. Defense counsel argued that some of them were less than truthful. The prosecutor's comments were proper rebuttal and did not constitute error.

Defendant next complains that error was committed when the trial court allowed the prosecutor to cross-examine him as to his opinion of the veracity of the State's witnesses. Initially it should be noted that ordinarily interrogation of this type would constitute error. However, we believe that this cross-examination was invited by the defendant who testified on direct examination that he was the subject of a police conspiracy.

Generally it is improper to question a defendant regarding his opinion concerning the veracity or credibility of other witnesses. (*People v. Riley* (1978), 63 Ill. App. 3d 176, 379 N.E.2d 746.) Such a line of inquiry is improper because it invades the province of the jury to determine which witnesses, whose testimony was conflicting, were telling the truth. *People v. Graves* (1978), 61 Ill. App. 3d 732, 378 N.E.2d 293.

However, in both *Riley* and *Graves* the prosecutor used only a conflict in the evidence as a predicate for his cross-examination of the defendant in which he asked if the State's witnesses were lying. Here there exists not just a conflict but the positive statement by defendant that he was the object of police conspiracy. As with the closing argument discussed above, the line of questioning was opened up and provoked by defendant's direct examination. While we feel that the prosecutor's questions might have been more delicately phrased, we do not believe that they amounted to reversible error under the circumstances.

Defendant's next contention is that the trial court erred in admitting Detective Zirkelbach's testimony regarding his conversation with the victim 15 minutes or so after the attack while he was receiving medical care at his residence. Defendant objected on hearsay grounds and the trial court overruled the objection, stating that the comments by the victim were admissible under the spontaneous declaration exception to the hearsay rule.

We hold that the trial court's ruling was correct. Defendant's reliance on *People v. Damen* (1963), 28 Ill. 2d 464, 193 N.E.2d 25, is misplaced. The court expressly stated that the fact that the officer in *Damen* asked the complainant what had happened was insufficient to destroy its spontaneity.

The instant case is similar to *Damen* in many respects. In the instant case Zirkelbach testified that shortly after the incident, at the victim's residence, the scene of the crime, he asked the victim what had happened. The victim's statement following the detective's question qualifies as a spontaneous declaration pursuant to *Damen*.

The parties agree that certain of defendant's convictions should be vacated pursuant to *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273, and *People v. Sass* (1979), 73 Ill. App. 3d 554, 392 N.E.2d 399. Defendant and the State agree that the aggravated battery and armed violence convictions should be vacated since they arise from the same physical act as that of the attempt (murder). The parties also agree that the burglary conviction should be vacated since it arises from the same physical act of entry which constituted the basis for the home invasion conviction. Finally, the parties agree that the conviction for theft over $150 should be vacated since it arose from the same physical act as the armed robbery conviction. Vacating these convictions and sentences would result in the attempt (murder), home invasion, and armed robbery convictions remaining.

A defendant is prejudiced where more than one offense is carved from the same physical act. Where the same physical act constitutes two or more offenses it is proper to enter a judgment of conviction and sentence only on the most serious of those offenses. *King, Sass.*

The supreme court's most recent pronouncement on the *King* doctrine is found in *People v. Donaldson* (1982), 91 Ill. 2d 164, 435 N.E.2d 477. There the defendant was convicted of attempt (murder), armed violence and aggravated battery. The supreme court determined that the convictions for both armed violence and aggravated battery were improper and that judgment should have been entered, and sentence imposed, only on the more serious offense. Thus, in the instant case where the attempt (murder) and aggravated battery convictions arose from the physical act of shooting the victim in the eye, only the attempt (murder) conviction may stand.

The same analysis applies to the burglary and home invasion convictions. Both convictions require entry as a physical act and therefore only the home invasion conviction may stand as it is the more serious offense.

Finally, the theft over conviction is vacated since the same physical act, taking of property from the victim, resulted in the conviction for armed robbery.

■ Therefore we vacate the judgments of conviction, and the sentences imposed, for aggravated battery, armed violence, burglary, and theft over $150. We do not disturb the convictions for attempt (murder), home invasion, and armed robbery.

The parties disagree on whether remand for resentencing is necessary. Where the record of the sentencing hearing shows that the trial judge considered multiple offenses separately and sentenced the defendant separately on each count of an information, there is no reason to remand for resentencing. (*People v. Kosanovich* (1979), 69 Ill. App. 3d 748, 387 N.E.2d 1061.) By considering each offense separately the trial court avoids any alleged taint of an invalid conviction.

■ In the instant case the record shows that the trial court considered each offense separately and sentenced the defendant separately on each count. Therefore, pursuant to *Kosanovich*, there is no reason to remand for resentencing.

Affirmed in part and vacated in part.

LONDRIGAN and TRAPP, JJ., concur.