THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* PAUL J. RATHGEB, Defendant-Appellant.—(Carlos Johnson, Defendant.)

Fourth District   No. 4—82—0490

Opinion filed April 6, 1983.

S. John Muller, of Charleston, for appellant.

Nancy Owen, State's Attorney, of Charleston (Robert J. Biderman and David E. Mannchen, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

After a trial by jury in the circuit court of Coles County, defendant was convicted on April 13, 1982, of the offenses of home invasion, burglary, aggravated battery and battery. On July 7, 1982, he was sentenced to concurrent sentences of 10 years, three years, two years, and 364 days, respectively. He appeals, contending the court erred (1) in denying his motion to suppress his confession, (2) in refusing to hear his oral motion, made at trial, to suppress illegally obtained evidence, (3) in failing to remove from the jury a juror who failed, at *voir dire*, to disclose a part-time job he held, (4) in denying his request for a mistrial, and (5) in permitting the prosecutor to give an improper explanation of the defense of involuntary intoxication

during closing argument. He also asserts: (1) The convictions for burglary and aggravated battery could not stand if the home invasion judgment stands; (2) the statutory provision for home invasion is unconstitutional; and (3) the court erred in denying defendant's motion for a directed verdict at the close of the State's case.

Evidence was presented at trial of two occurrences in the late evening of September 11, 1981, in Charleston. The first incident occurred when two males entered the residence of an 80-year old woman, Ruby Dow, and began beating her on her face and chest. Mrs. Dow suffered multiple bruises and lacerations, a fractured nose and a fracture of one of her forearm bones as a result of the beating. The intruders requested money and thoroughly ransacked the Dow residence. The second incident occurred at a duplex where Mitchell Powell resided. At approximately 11:45 p.m., a black male burst in the front door of the residence, grabbed a purse which belonged to Powell's wife and ran away with it. Powell gave chase and caught the culprit in his backyard. The burglar was then joined by a companion, and the two hit Powell repeatedly for 30 to 40 seconds. They then abruptly stopped the beating and ran off. Powell was unable to provide an accurate description of either of the above individuals, although he told the investigating officer that they were both black males. Several items taken from the Dow residence were discovered behind the other duplex of the building in which Powell resided.

The brunt of the evidence against the defendant was his confession.

The evidence presented at the hearing on defendant's motion to suppress his confession showed that he and another suspect were brought to the Charleston Police Station at about 12:16 a.m. on September 12, 1981. They were then taken to the booking room where defendant stayed for about 15 minutes. During this time, the other suspect escaped. Defendant was then handcuffed to the vertical bars of a railing in a stairwell. By sliding his locked hands up or down the railing, defendant was able to sit down or, probably, stand up. The staircase was not used much at night, and defendant was fairly isolated from others in the police station. At approximately 1 a.m., defendant was moved to a command room. Because defendant had some abrasions and bruises on his body, medical personnel of an ambulance unit were summoned. They examined defendant and stated an opinion that any injuries he had were superficial. Defendant apparently declined further medical attention.

The evidence at the hearing indicated that after the medical examination, defendant executed a written waiver of *Miranda* rights.

Defendant stated he did not remember signing it, and said he could not have read it because he did not have his glasses with him. He then made an oral statement in which he denied participation in any burglaries or break-ins. The making of the statement took approximately 30 minutes. The conversation ended when the defendant refused to talk further with the interviewing officer. Defendant was then returned to the stairwell and again handcuffed to the railing. Subsequently, defendant was returned to the briefing room and permitted to make a phone call to his roommate. An officer who was present testified that during the telephone call, defendant told the roommate he wondered if he should go ahead and tell everything he knew to the police. After completing the telephone call, defendant told the officer he would like to talk to the officer. A detective was summoned so that the statement defendant was to make could be recorded. At about 2:30 a.m., defendant made a statement confessing his guilt at both residences. The statement was repeated for taping. Prior to making the statement, defendant was not readvised of his *Miranda* rights, but, according to the officer, defendant had before him the rights form he had previously signed. In the statement, defendant responded in the affirmative to a question as to whether he understood his rights. Defendant testified that he was frightened while chained to the railing and was not certain that he would not have to stay there until he gave a second statement.

The evidence was in sharp dispute as to defendant's state of sobriety during the course of the evening. An acquaintance of defendant testified that defendant was very much under the influence of alcohol and marijuana that evening. Another acquaintance testified that for the same reason, defendant "was not himself" that day. Defendant testified that he was "bombed." However, in his taped statement, he said he might be "a little tipsy" but knew exactly what he was doing in confessing. The three law enforcement officers who were with defendant that evening all testified to opinions that defendant was not under the influence of alcohol at the time. Only one officer testified that defendant was under the influence of marijuana, and that officer described the influence as being minimal.

Defendant maintains his confession should have been suppressed, because it was not shown to be voluntary. The State had the burden of proving its voluntariness by a preponderance of the evidence. (*People v. Jackson* (1968), 41 Ill. 2d 102, 242 N.E.2d 160.) Defendant bases his claim that voluntariness was not proved upon (1) his isolation at the police station after refusing to confess, (2) the pain he suffered at the time because of his injuries, (3) his inexperience

with police procedures, and (4) he was under the influence of drugs and alcohol. The latter three contentions can be disposed of summarily. His injuries were shown to be superficial, and there was no evidence he complained of pain. Although he may not have been experienced with police procedures, he was a college student and nothing in his statements indicated confusion. The trial court could properly have believed the officer's conclusion that defendant had no substantial impairment because of his ingestion of alcohol or marijuana.

■ Defendant's contentions concerning his being handcuffed to the railings are of more concern. Handcuffing has been held to be insufficient, of itself, to require suppression of a confession obtained during its existence. (*People v. Cukojevic* (1981), 103 Ill. App. 3d 711, 431 N.E.2d 1154; *People v. Caldwell* (1967), 79 Ill. App. 2d 273, 224 N.E.2d 634.) In those cases there was no indication that the defendant had refused to talk and then changed his mind as here. Nevertheless, the trial court could properly have determined here that the confession did not result from the handcuffing. The testimony that defendant asked a friend whether he should tell the full story indicated that defendant was making a rational determination as to whether to confess and was not being coerced into doing so.

■ The trial court's determination that the confession was voluntary was not contrary to the manifest weight of the evidence.

■ ■ We also hold that the trial court did not err in refusing to hear defendant's motion to suppress evidence obtained from defendant after his arrest. The motion was based on a contention that his arrest was without probable cause and illegal. Section 114—12 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 114—12) requires such a motion be made before trial "unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion." The defense maintains that it learned only at trial that the police report that went out after the crimes had been committed stated that both suspects were black. As defendant was white, he maintains that this evidence was highly probative that the arresting officer lacked probable cause to arrest him. However, the testimony at preliminary hearing clearly conveyed to the defense the general circumstances under which the arrest was made, and the police report did not add a great deal to that. The trial court was not in error in ruling the motion to have been untimely.

■ A juror, during *voir dire*, stated that his employment was with a firm supplying business forms but, apparently inadvertently, failed to state that he was a part-time bartender at the Moose Club, one day a week. The defense maintains it would not have accepted

the juror if it had known of his bartending activities, because the evidence showed that defendant, although under age, had consumed alcoholic beverages at three taverns prior to the offenses. The juror stated that he had no prejudices concerning the use of alcohol. The mere suspicion that inaccurate information given by a juror may cover up a bias is insufficient to require the setting aside of a verdict. (*People v. White* (1980), 88 Ill. App. 3d 788, 410 N.E.2d 1082.) No error resulted from the foregoing.

■ A physician testified as to the injuries received by one of the victims and briefly showed the jury a photograph of the victim taken the morning after the crimes which depicted the injuries to her face. Although the photograph was not admitted into evidence, it was not unduly gruesome and tended to show the extent of injuries suffered by the victim. The trial court properly denied a motion for a mistrial based upon the episode.

■ The prosecutor, during closing argument stated hypothetical examples of what constitutes a degree of voluntary intoxication sufficient to negate the mental state necessary to commit a crime. These hypotheticals were accurate in their depiction of the law and were proper argument. (*People v. Schreiber* (1982), 104 Ill. App. 3d 618, 432 N.E.2d 1316.) No error resulted.

■ Neither burglary, aggravated battery, nor home invasion are included offenses of the other either by definition or as charged. Burglary occurs when an unauthorized entry is made with the intent to commit a felony or theft. (Ill. Rev. Stat. 1981, ch. 38, par. 19—1(a).) Home invasion requires no specific intent at the time of unauthorized entry but requires injury to a person after the entry. (Ill. Rev. Stat. 1981, ch. 38, par. 12—11(a)(2).) Battery can be an included offense of home invasion, but here the aggravated battery charged was based upon the battery being against a victim 60 years of age or older. (Ill. Rev. Stat. 1981, ch. 38, par. 12—4(b)(10).) Neither by the statutory provision for home invasion nor as charged was the victim required to be 60 years of age or older. Evidence was introduced that the defendant struck Mrs. Dow more than once. None of the offenses were carved from the same physical act. (See *People v. Dixon* (1982), 91 Ill. 2d 346, 438 N.E.2d 180.) None of the convictions need be set aside because of the existence of other convictions.

■ Defendant maintains that the designation of home invasion as a Class X felony is unconstitutional, because it violates the separation of powers in limiting the sentencing discretion of judges. Any statutory classification of an offense for sentencing purposes does this. Clearly, no violation of the separation of powers results.

Finally, defendant maintains a directed verdict should have been granted the defendant at the close of the State's case because the State failed to prove that defendant was not a police officer acting in the line of duty as required by section 12—11(a) of the Criminal Code of 1961 in defining the offense of home invasion. The evidence of admissions by defendant show that even if he had been a police officer, he was not acting in the line of duty. (See *People v. Davis* (1982), 106 Ill. App. 3d 260, 435 N.E.2d 838.) We affirm.

Affirmed.

WEBBER, P.J., and TRAPP, J., concur.