THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
FREDDIE ROBINSON, Defendant-Appellant.

First District (1st Division)   No. 83—279

Opinion filed June 25, 1984.

James J. Doherty, Public Defender, of Chicago (Donna Hickstein-Foley, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and Jeanette Sublett, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McGLOON delivered the opinion of the court:

After a jury trial, defendant Freddie Robinson was found guilty of attempted armed robbery, residential burglary, home invasion and unlawful restraint. Defendant was sentenced to concurrent terms of imprisonment of 10 years for attempted armed robbery, residential burglary and home invasion, and three years for unlawful restraint. Defendant appeals.

On appeal, defendant contends (1) the trial court erred in submitting to the jury a police photo book containing defendant's picture; (2) his conviction for residential burglary must be vacated because it is an included offense of home invasion; and (3) the prosecutor's comments during closing argument deprived him of a fair trial.

The complainant, Leslie Wilson, testified that on May 18, 1982, at 11:15 p.m., she entered the vestibule of her apartment building at 550 West Brompton in Chicago. As she stood by her mailbox, defendant entered the vestibule, removed a gun from his pocket and demanded Wilson's money and valuables. Wilson offered to give defendant her money, but defendant said he wanted to go inside. Wilson unlocked the door to the stairway and proceeded to her second floor apartment. Defendant followed, pressing a gun to Wilson's back. Wilson hesitated as she entered her apartment and defendant placed the gun to her head. They had taken three or four steps into the apartment when Wilson pushed defendant's arm away and began screaming. Defendant slapped Wilson, told her to stop screaming and fled.

Wilson phoned the police. After police officers arrived, she gave Officer Mills a description of her assailant. On May 24, 1982, she spoke to Detective Baldree about the incident. On June 3, 1982, she viewed five or six photo albums given to her by Baldree and identified defendant. On June 18, 1982, she identified defendant in a lineup.

Officer Warren Mills testified that Wilson gave him a description of the offender shortly after the incident occurred. He also spoke to Mr. Stroud, who saw defendant leave the building. Stroud and Wilson gave similar descriptions. Detective William Baldree testified that Wilson viewed five or six photo albums at the police station on May 24, 1982, and selected a photograph of defendant. Baldree also conducted the lineup at which Wilson identified defendant.

Defense witness Steven Stroud testified that on the evening of May 18, 1982, he heard a woman screaming and saw a man walking quickly from the apartment building at 550 West Brompton. The man aimed a gun at Stroud when Stroud approached him. In December 1982, Stroud viewed photographs of the lineup at which the complainant identified defendant. Stroud did not choose defendant as the man he saw walking from the building. At trial, he was unable to say whether defendant was the man he saw on the day of the crime.

During trial, the State introduced photographs of the apartment building courtyard, the doorway, vestibule and stairway landings. Also introduced were photos of the victim's apartment, the police album containing defendant's picture, and a photo of the lineup. The State requested that all the exhibits be submitted to the jury to use during deliberations, and the court granted the request over defendant's objections.

■ On appeal, defendant first contends the trial court erred in allowing the police photo album containing defendant's picture to be submitted to the jury. He maintains the evidence had no probative purpose and was suggestive of other unrelated crimes.

The decision to submit exhibits to the jury is within the discretion of the trial court, whose decision will not be reversed absent an abuse of discretion. (*People v. Cross* (1981), 100 Ill. App. 3d 83, 426 N.E.2d 623.) While "mug shots" suggest other criminal activity, they may nonetheless be admitted where they are probative of the issue of defendant's identity and the manner in which an identification is made. (*People v. Dean* (1981), 99 Ill. App. 3d 999, 426 N.E.2d 279; *People v. Woodruff* (1978), 62 Ill. App. 3d 949, 379 N.E.2d 907.) In *Dean*, the court found police photos particularly probative where the defense was based on misidentification.

Here, the "mug shot" book was used during direct and cross-examination of the victim and Detective Baldree. There was extensive testimony regarding defendant's appearance on the day of the crime, and defense counsel conducted a detailed cross-examination of the victim on this matter. In fact, when the victim testified she did not notice scars on defendant's face and chest, defense counsel asked defendant to show her the scars. Additionally, defendant's sole witness testified to his inability to identify defendant in the lineup photo. Clearly, the defense was based on misidentification and identification was a primary issue. The probative value of the "mug shot" book outweighs any prejudicial effect, and we therefore find no abuse of discretion in submitting the book to the jury.

■ Second, defendant contends that his residential burglary and

home invasion convictions arose from the same act and that his conviction for residential burglary must be vacated. He relies on *People v. Jones* (1982), 108 Ill. App. 3d 880, 439 N.E.2d 1011, as support for his contention. In *Jones*, however, the State agreed to vacate a burglary conviction. In analyzing the issue, the court merely noted that both burglary and home invasion require proof of entry as the physical act and that under *People v. Donaldson* (1982), 91 Ill. 2d 164, 435 N.E.2d 477, and *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, only the home invasion conviction could stand. Later, in *People v. Rathgeb* (1983), 113 Ill. App. 3d 943, 447 N.E.2d 1351, the same district which rendered the *Jones* decision held that burglary was not an included offense of home invasion because burglary required proof of a more culpable mental state. The decision in *Rathgeb* is consistent with the prior decision from this district in *People v. Pavic* (1982), 104 Ill. App. 3d 436, 432 N.E.2d 1074. In addition to noting the difference between the mental state required for burglary and home invasion, the court in *Pavic* recognized it would be possible to commit home invasion without committing burglary and concluded that burglary was not an included offense of home invasion.

In this case, defendant was charged and convicted of residential burglary. As in burglary, this offense requires proof of entry, "with the intent to commit therein a felony or theft." (Ill. Rev. Stat. 1983, ch.38, par. 19—3(a).) Home invasion does not require proof of this same intent. Because residential burglary requires proof of an element not necessary for proof of home invasion, it cannot be an included offense. (*People v. Rathgeb* (1983), 113 Ill. App. 3d 943; *People v. Pavic* (1982), 104 Ill. App. 3d 436.) Furthermore, section 12—11(a)(2) of the Criminal Code of 1961, upon which defendant's home invasion charge was based, requires proof of a threat or use of force against the person in the dwelling. (Ill. Rev. Stat. 1983, ch. 38, par. 12—11(a)(2).) Thus, the same acts did not give rise to the convictions at issue. Accordingly, we affirm defendant's conviction for residential burglary.

■ Third, defendant contends the prosecutor's comments during closing argument deprived him of a fair trial.

Defendant argues that comments regarding a telephone conversation between Wilson and Detective Baldree were improper. Neither witness testified to the content of the conversation, but the prosecutor asked the jury to infer the matters which may have been discussed. We agree that this comment was improper because it suggests that evidence which was inadmissible could be inferred and considered by the jury. *People v. Connors* (1980), 82 Ill. App. 3d 312, 402 N.E.2d

773.

Defendant also complains of several comments which were personal attacks on defense counsel. The prosecutor accused defense counsel of speaking "in forked tongue" and of "using tricks, using gimmicks to get her client to beat this rap." He also commented on the attempt to discredit Wilson's identification of defendant and stated "she may be small, and she may be a woman, but she's a pretty dirty trial lawyer." These comments disparage the integrity of defense counsel and have been condemned consistently by the courts in this State. (*People v. Starks* (1983), 116 Ill. App. 3d 384, 394, 451 N.E.2d 1298, 1305.) They are irrelevant to any issue in the case and only serve to inflame the jury.

The next assignment of error concerns the prosecutor's comment during rebuttal on the State's burden of proof. He noted that the State deals with the standard of proof beyond a reasonable doubt every day, that "it is not a magical or scientific concept" and that "it is the same standard used in a shoplifting case \*\*\*." In *People v. Bryant* (1983), 94 Ill. 2d 514, 447 N.E.2d 301, comments similar to these were held to be within the bounds of proper and legitimate argument, and we find no prejudice arising from this argument. *People v. Starks* (1983), 116 Ill. App. 3d 384, 451 N.E.2d 1298, cited by defendant, is distinguishable because the prosecutor therein stated "we don't have a burden." Here, the State did not make such a blantantly erroneous statement and did not minimize its burden of proof.

Finally, defendant contends the prosecutor relied on evidence not proved during trial when, during rebuttal, he made the following argument:

"If there is anything that Leslie [Wilson] said at the preliminary hearing, in those 20 pages, you betcha the defense attorney would have brought it out. But Leslie's testimony was consistent before you, as it was on the day of the preliminary hearing."

There is no evidence in the record that the preliminary hearing testimony was consistent with Wilson's trial testimony. The State never introduced the transcript of the preliminary hearing to show such facts even though defendant used the transcript during cross-examination of the complainant. We find that this part of the prosecutor's argument was improper because it was based on facts not in evidence. *People v. Connors* (1980), 82 Ill. App. 3d 312, 402 N.E.2d 773.

This court deals regularly with issues regarding improper and prejudicial prosecutorial comments and the frequency with which such conduct occurs is disturbing. Apparently, some prosecutors have not

heeded the warnings of this court and persist in engaging in whatever conduct they believe will assure convictions. However, the manner in which a case is tried is as important as the outcome of the trial. Disparaging remarks and improper arguments only serve to disgrace the attorney making the remarks, tarnish the reputation of the office, and increase the possibility of reversal.

In determining whether the comments in this case warrant reversal and a new trial, we must consider whether they prejudiced the jury and constituted a material factor leading to conviction. (*People v. Whitlow* (1982), 89 Ill. 2d 322, 433 N.E.2d 629.) After reviewing the evidence, we find that the comments did not contribute substantially to the verdict. The complaining witness had ample opportunity to view the accused and positively identified him three times. Each objection to improper arguments was sustained and the jury was instructed to consider only the properly admitted evidence. We are also influenced greatly by the following comment of the trial court in ruling on defendant's motion for a new trial:

> "That woman was one of the best witnesses that I have ever heard or seen in a court, and I have been here hundreds of times. She was extremely good.
>
> * * *
>
> She was extraordinarily good. And that's a matter for the jury to determine. She was precise, her memory was good. Everything about her was compelling. And that's why he got convicted."

For these reasons, we find that reversal and a new trial are not required.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

GOLDBERG and CAMPBELL, JJ., concur.