THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICHARD GOVEDNIK, Defendant-Appellant.

First District (4th Division)   No. 85—2237

Opinion filed November 26, 1986.—Rehearing denied January 8, 1987.

718

Steven Clark and Joan S. Colen, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., and Rimas F. Cernius, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE LINN delivered the opinion of the court:
Defendant was charged in a 15-count indictment with home invasion, residential burglary, attempted armed robbery, aggravated battery, attempted murder, and armed violence. Following a bench trial in the circuit court of Cook County, he was found guilty of home invasion and armed violence and sentenced to 25-year terms of imprisonment. He was also found guilty of residential burglary and attempted armed robbery and sentenced to 15-year terms, which were to be served concurrently with the terms previously entered, as well as with the 5-year term of imprisonment imposed on his aggravated-battery conviction. In this appeal defendant contends that his residential-burglary and armed-violence convictions must be vacated because they were based upon the same entry as his home invasion conviction, and, secondly, that the trial court abused its discretion in sentencing him to such lengthy terms of imprisonment.

BACKGROUND
The record shows that the incident giving rise to the charges against defendant occurred in the Dziak family home at 324 South La Grange in La Grange Park, Illinois, on Sunday evening June 17, 1984. About 10:15 p.m. Mrs. Dziak was reading a newspaper in the living room of her home while her husband slept and her 29-year-old son, Tom, was watching television in another room.

Tom Dziak testified that about this time he saw someone in the dining room walking toward his mother with a gun in his hand. He walked in and faced the hooded gunman, who then threw a knapsack at him and said, "You know what I want; you know what I want." Tom took the knapsack, told the gunman he did not know what he wanted, and struck him on the head with it. A struggle ensued in which he managed to wrestle the gunman to the floor in the kitchen, sat on top of him, and applied a choke hold. While he had the gunman in this position, Dziak felt a sharp pain in his lower back and realized that he had been stabbed with a knife. Mrs. Dziak came to Tom's assistance and placed her knee on the gunman's back. Meanwhile, Mr. Dziak telephoned the police, and when they arrived, one of them mis-

took Tom for the intruder and placed a gun to his head. When the officer realized his mistake, he ordered the intruder to drop the knife, then handcuffed and unmasked him; at this time defendant's identity as the intruder was revealed.

Tom Dziak further stated that he was taken to the hospital by ambulance that evening, where he was treated for the lacerations on his back, then released. During cross-examination he stated that he did not recall defendant ever mentioning the name "Tim" when he was in the house, but acknowledged that at some point during the encounter he realized that the gun defendant was carrying was not functional. He also stated that he did not observe anything abnormal about defendant's speech or gait but did detect an odor of alcohol about him. He also stated that he did not see the knife until he was stabbed with it.

Elizabeth Dziak testified that about 10:15 p.m. she left the living room and was proceeding to the kitchen when she encountered a hooded gunman coming toward her. When her son Tom entered the room, the intruder turned toward him and said, "Tim, give me what you owe me," then threw a knapsack at him. Tom backed up and hit him on the head with the knapsack, then chased him out to the kitchen where he wrestled him to the floor. She responded to Tom's call for help by placing her knee on the man's left shoulder and at this time observed the knife which he held in his left hand. When the police officers arrived, she directed their attention to the intruder and was present when they handcuffed and unhooded him; she identified defendant as that person.

Officer Edward Dwyer stated that he responded to the burglary call at the Dziak residence, and when he arrived saw three people involved in a struggle in the kitchen. He observed a woman and two men struggling with a knife and placed his hand on the arm which was holding it. He also saw a revolver in Tom Dziak's hand and told him to drop it. He then took possession of the knife, which was being waved about, and with the assistance of officer Murray, handcuffed the intruder, patted him down, and removed the hood from his face, revealing defendant's identity. The officer did not detect any alcohol about defendant at that time, and did not observe anything unusual about his speech, eyes, or walk at the station.

When he realized that Tom Dziak had been stabbed, he called an ambulance and later that evening observed the lacerations on his lower back; he stated that they were about 1½ inches long but not that deep. He also recovered the gun, knife, hood, and knapsack from the Dziak residence and inventoried them at the La Grange police de-

partment facility.

The State rested its case in chief and defendant moved for a directed finding on all counts. The court granted defendant's motion as to counts 8 and 10, which alleged aggravated battery to Mrs. Dziak, but denied the motion as to the remaining charges.

Defendant then testified in his own behalf setting forth the defenses of mistake and intoxication. He related that two weeks prior to his entry into the Dziak residence, he was at a "casual" party in the vicinity where he was introduced to a person named "Tim." He was told that Tim would return a profit on any money entrusted to him within a few days, and defendant gave him $500. Defendant never heard from him again and his subsequent attempts to locate him were unsuccessful.

On the night in question, he stated that he ate dinner and had a few beers with a friend about 6 p.m., then took some medication to alleviate the pain he was experiencing as a result of some dental work. He stated that the combination of the pills and alcohol made him energetic and that his thoughts turned to doing something about the "Tim" situation. Accordingly, he rode his bicycle to the residence at 324 South La Grange, where, armed with a toy gun and wearing a mask which he made out of the rag he carried to clean his bicycle, he approached the door carrying a knapsack. He then scratched at the door of the residence, a routine which he had observed at the parties he attended in the area, and walked in without waiting for a response. He heard music inside which he associated with a party, but now realized that the sounds were probably emanating from a television set.

When he encountered Mrs. Dziak, he asked for Tim and the money he owed him. At that point he realized that he was in the wrong house and attempted to apologize and leave; however, he was prevented from doing so by Tom Dziak, who accosted him and held him in a "death grip" on the floor. He then recalled that he was carrying a knife in a sheath on his belt and attempted to defend himself with it. The police arrived shortly thereafter, and he was arrested and taken to the station.

Officer Murphy testified in rebuttal that he transported defendant to the station and interviewed him about 10:35 p.m. He stated that he did not observe anything unusual about defendant's speech; defendant spoke clearly and had no problem answering questions, and he further observed that he had good balance. In order to determine if defendant was under the influence of drugs or narcotics at the time, the officer conducted a light test where he observed that defendant's eyes di-

722

lated with the light and returned to a normal condition; this indicated to him that defendant was not under the influence of any drugs or alcohol. He acknowledged that he detected a slight odor of alcohol on defendant's person, but it was his opinion, based on his observations and experience on the force, that defendant was not under the influence of alcohol or other intoxicants that evening.

Following the arguments of counsel, the court found defendant guilty of home invasion, residential burglary, attempted armed robbery, aggravated battery, and armed violence based on home invasion (intentional injury), then sentenced him to the terms of imprisonment indicated above. In his appeal from these judgments, defendant first contends that his convictions for residential burglary and armed violence predicated on home invasion must be vacated because they are based on the same entry as his conviction for home invasion. The State responds that the trial court properly convicted defendant on all three offenses, arguing specifically that the conviction for home invasion and residential burglary may stand because neither is a lesser included offense of the other, or carved from the same act, and that his armed-violence conviction is also proper because it is based on a separate physical act.

OPINION

■■ ■ The standard by which we determine the propriety of multiple convictions and sentences was set forth in *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838. (*People v. Garza* (1984), 125 Ill. App. 3d 182, 465 N.E.2d 595.) In *King* the supreme court held that where more than one offense arises from a series of incidental or closely related acts and the offenses are not, by definition, lesser included offenses, convictions with concurrent sentences may be entered. (*People v. King* (1977), 66 Ill. 2d 551, 566.) To be a lesser included offense, it is necessary that the greater offense include every element of the lesser offense plus one or more elements; in other words, the lesser offense does not have any element that is not included in the greater offense, so that it is impossible to commit the greater offense without necessarily committing the lesser. *People v. Foust* (1980), 82 Ill. App. 3d 516, 401 N.E. 1329; *People v. Garza* (1984), 125 Ill. App. 3d 182, 465 N.E.2d 595.

■■ Under this analysis, courts have frequently held that residential burglary is not a lesser included offense of home invasion because it requires a different mental element. (See, *e.g., People v. Robinson* (1984), 125 Ill. App. 3d 1077, 467 N.E.2d 291; *People v. Hawkins* (1984), 125 Ill. App. 3d 520, 466 N.E.2d 299; *People v. Snow*

(1984), 124 Ill. App. 3d 955, 464 N.E.2d 1262.) Residential burglary requires proof of entry into the dwelling with the intent to commit a felony or theft therein. (Ill. Rev. Stat. 1983, ch. 38, par. 19—3(a).) This type of intent is not required to establish the offense of home invasion (*People v. Robinson* (1984), 125 Ill. App. 3d 1077, 467 N.E.2d 291); home invasion simply requires an unlawful entry into the dwelling by an offender who had "knowledge" or "reason to know" that someone was present therein. (Ill. Rev. Stat. 1983, ch. 38, par. 12—11; *People v. Hawkins* (1984), 125 Ill. App. 3d 520, 466 N.E.2d 299.) Moreover, the elements of residential burglary are satisfied when defendant makes an unauthorized entry into the victim's dwelling with the requisite intent, while home invasion is not completed until the offender, armed with a dangerous weapon, either uses or threatens force against someone inside or injures him. (125 Ill. App. 3d 520, 466 N.E.2d 299.) Since every element of residential burglary is not included in home invasion, it cannot be considered a lesser included offense (125 Ill. App. 3d 520, 466 N.E.2d 299; *People v. Robinson* (1984), 125 Ill. App. 3d 1077, 467 N.E.2d 291), and therefore defendant's conviction for both offenses in the instant case may not be defeated on this ground. See *People v. Lobdell* (1983), 121 Ill. App. 3d 248, 459 N.E.2d 260.

Defendant urges, however, that pursuant to the one-act, one-crime rule announced in *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, his convictions for both offenses cannot stand because they are based upon a single physical act of entering the Dziak home. This argument has also been decided adversely to defendant.

In *People v. Snow* (1984), 124 Ill. App. 3d 955, 464 N.E.2d 1262, the court recognized that although both crimes shared a single act of entry, it could not be said that they were based on the same physical act since the common element of unlawful entry does not complete the offense of home invasion. (124 Ill. App. 3d 955, 963, 464 N.E.2d 1262; see also *People v. Lobdell* (1983), 121 Ill. App. 3d 248, 459 N.E.2d 260.) This same reasoning was adopted by the Fourth District Appellate Court in *People v. Rathgeb* (1983), 113 Ill. App. 3d 943, 447 N.E.2d 1351), a case which followed its decision in *People v. Jones* (1982), 108 Ill. App. 3d 880, 439 N.E.2d 1011, relied upon by defendant. In *Jones* the State had confessed error, and the court held that defendant's burglary conviction would be vacated because it was based upon the same physical act of entry which constituted his home invasion conviction. (108 Ill. App. 3d 880, 890.) In light of the *Rathgeb* decision, however, we do not find *Jones* controlling in the instant case. See *People v. Robinson* (1984), 125 Ill. App. 3d 1077, 467

N.E.2d 291; *People v. Lobdell* (1983), 121 Ill. App. 3d 248, 459 N.E.2d 260.

■■ ■ Furthermore, it has been held that a person may be guilty of two offenses when a common act is part of both offenses or part of one offense and the only act of the other offense. (*People v. Lobdell* (1983), 121 Ill. App. 3d 248, 459 N.E.2d 260, citing *People v. Tate* (1982), 106 Ill. App. 3d 774, 436 N.E.2d 272.) As indicated above, both home invasion and residential burglary require an unauthorized entry, and the record clearly shows that defendant made a single entry into the Dziak home. However, since the unauthorized entry into the victims' home was only part of the home-invasion offense, and the sole act of the residential-burglary offense, it cannot be said that the two offenses were carved from the same physical act. (*People v. Lobdell* (1983), 121 Ill. App. 3d 248, 459 N.E.2d 260; see also *People v. Robinson* (1984), 125 Ill. App. 3d 1077, 467 N.E.2d 291; *People v. Dixon* (1984), 122 Ill. App. 3d 141, 460 N.E.2d 858.) Thus, in accordance with the reasoning in *King*, we conclude that defendant's convictions for both home invasion and residential burglary may stand because residential burglary is not, by definition, a lesser included offense of home invasion and because the multiple convictions do not violate the one-act, one-crime principle. *People v. Lobdell* (1983), 121 Ill. App. 3d 248, 459 N.E.2d 260; see also *People v. Snow* (1984), 124 Ill. App. 3d 455, 464 N.E.2d 1262.

We find persuasive, however, defendant's argument that his armed-violence conviction, which was based on home invasion (intentional injury), must be vacated. By definition, the offense of home invasion requires that the offender enter the dwelling place of another without authority, knowing or having reason to know that one or more persons are present, and while armed with a dangerous weapon uses force or threatens the immediate use of force on any persons therein (Ill. Rev. Stat. 1983, ch. 38, par. 12—11(a)(1)) or intentionally injures any person or persons within the dwelling place (Ill. Rev. Stat. 1983, ch. 38, par. 12—11(a)(2)). This court has interpreted the wording of this statute to reflect the legislative intent to impose only one count of home invasion for one unlawful entry of one dwelling regardless of the number of persons present or harmed. (*People v. Ammons* (1983), 120 Ill. App. 3d 855, 458 N.E.2d 1031.) This rationale was reaffirmed in *People v. Morrison* (1985), 137 Ill. App. 3d 171, 484 N.E.2d 329, where this court reversed six of defendant's seven convictions for home invasion when the record showed that defendant had made a single entry into the same dwelling although more than one person was present.

■ In the instant case defendant was charged with four counts of armed violence. He was found not guilty of the charge based on the attempted murder of Tom Dziak, but judgment was entered on count 14, which alleged armed violence predicated upon home invasion (the infliction of intentional injuries on the Dziaks). The court also ruled that counts 13 and 15, which were predicated respectively on intentional injury to Tom Dziak and residential burglary, merged into that count. After considering these convictions in light of the rationale expressed in *Ammons* and *Morrison*, we believe that the entry of judgment on the charge of armed violence as expressed in count 14 of the information was improper.

We observe that the judgment entered on defendant's home-invasion conviction was charged under section 12—11(a)(1) (threat of force while armed with a dangerous weapon), and that his armed-violence conviction was predicated on section 12—11(a)(2) (infliction of intentional injury). We agree with defendant that to permit both of these convictions to stand would in effect allow the State to do indirectly what it cannot do directly, *i.e.,* convict defendant of two offenses of home invasion based on a single entry. This has the appearance of "double dipping" (see *People v. Green* (1980), 83 Ill. App. 3d 982, 404 N.E.2d 930), a practice condemned in *King*, and, in accordance with the above-cited authority, we vacate defendant's conviction and sentence for armed violence.

■ We turn now to defendant's final contention that the trial court abused its discretion in sentencing him to substantial terms of imprisonment. In support of that position, he cites the court's emphasis on the protection of society from crimes of this nature in general, rather than focusing on the particular facts of the case, and claims that his prior criminal record is minor and that his recent brushes with the law do not detract from his potential for rehabilitation. In sum, he asserts that the terms are disproportionate to the seriousness of the offense and fail to comply with the objective of restoring him to useful citizenship. The State responds that defendant's sentences are proper given the seriousness of the offenses and the impact on the victims.

Although Supreme Court Rule 615(b)(4) (87 Ill. 2d R. 615(b)(4)) grants reviewing courts the power to reduce the sentences imposed by the trial court, it is well settled that the imposition of a sentence is a matter of judicial discretion and that absent an abuse of this discretion, the sentence of the trial court may not be altered upon review. *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882; see also *People v. Younger* (1986), 112 Ill. 2d 422, 494 N.E.2d 145.) The Illinois

Constitution provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship" (Ill. Const. 1970, art. I, sec. 11); however, in making its determination the sentencing court is not required to give greater consideration to one factor over the other (*People v. Waud* (1977), 69 Ill. 2d 588, 373 N.E.2d 1).

The supreme court has recognized that the trial court is charged with the difficult task of fashioning a sentence which strikes a proper balance between protecting the interests of society while allowing for the possibility of the rehabilitation of the offender (*People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344) and has deemed that a reasoned judgment as to the proper sentence must be based upon the particular circumstances of each case (*People v. Bolyard* (1975), 61 Ill. 2d 583, 338 N.E.2d 168). Given the superior position of the trial court to observe the myriad factors which enter into the sentencing decision, its determination is entitled to great deference and weight (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) Where the sentence falls within the limits prescribed by the legislature, it is well settled that the sentence should not be disturbed unless it is at great variance with the spirit and purpose of the law or manifestly in excess of the proscriptions of the Illinois Constitution. (*People v. Sprinkle* (1974), 56 Ill. 2d 257, 264, 307 N.E.2d 161.) Our review indicates that this is not such a case.

At the sentencing hearing Mrs. Dziak testified that she has been afraid in her home since the incident and still pauses to catch her breath when she walks into her dining room. She also informed the court that she keeps her doors locked and even takes her keys with her when she works in her yard. In addition, she stated that her son keeps a baseball bat next to his bed as he sleeps and is awakened by the least little noise and, finally, that the family feels as though its freedom has been taken away. The prosecutor noted defendant's prior criminal record and reviewed the facts of the case, then recommended to the court that defendant be sentenced to a term of 60 years' imprisonment.

In mitigation, defense counsel pointed out that defendant's prior convictions were primarily drug-related and went back more than a decade when defendant made a foray into the drug culture in California; but more recently defendant had only been convicted of resisting arrest and driving on a suspended driver's license. Counsel also pointed out that defendant is an intelligent man who has some college education, a man who is now afraid and cannot understand the forces which motivated him that evening. He stated that he did not believe

that defendant was a present danger to society and asked the court to consider his potential for rehabilitation in fashioning a sentence.

Before announcing its decision, the court characterized the case as a "crime of terror" where a masked and armed individual entered the Dziak home and injured a resident in the struggle which ensued. The court commented that the people who experienced the trauma of that evening will never again feel safe in their home and that the protection of society was a paramount issue in the case. The court then stated its beliefs that the sentence should reflect sufficient punishment for the seriousness of the crime, that defendant was capable of repeating this type of act, and that the court considered him to be a clear and present danger to society. At this juncture we note at the close of evidence and argument at trial that the court expressed its disbelief in the premise set forth by defendant in his trial testimony. The court then reviewed defendant's prior criminal background, noted the lack of any significant crimes in the recent past, and balanced this factor against the "terrible crime" perpetrated by defendant in the instant case. The court concluded:

"[I] should impose a sentence that will be one consistent with his background and not so severe that I will give him what amounts to a life sentence.

But also that it is strong and serious enough to send a message that this type of conduct will not be tolerated. And keep him off the streets long enough so that he is not likely to do this again."

The court then sentenced defendant to the terms cited above.

The record clearly indicates that the sentences set by the court fall within the parameters established by the legislature (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1) and that they were arrived at after a good deal of thought and deliberation (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882). It is also clear that the court carefully considered the evidence within the prescribed statutory framework (see *People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344), and, as a result, we find no basis to substantiate defendant's claim that the court abused its sentencing discretion.

In *People v. Barney* (1983), 111 Ill. App. 3d 669, 444 N.E.2d 518, this court recognized that the imposition of a sentence of any length within the range provided for the class of the crime for which defendant was convicted is a decision committed by statute to the discretion of the sentencing court and that the statute does not require that a minimum sentence be imposed in the absence of aggravating factors (see also *People v. Martin* (1983), 112 Ill. App. 3d 486, 445 N.E.2d

795). Here the court cited the terror involved in the commission of the offense and the need to protect society and deter others from committing similar crimes in setting a term in excess of the minimum.

Defendant argues that it was error for the court to increase the sentence based on these factors because the nature of the offense and the impact on the victim are inherent in every home invasion, citing *People v. Conover* (1981), 84 Ill. 2d 400, 419 N.E.2d 906. We note, however, that the supreme court has recently explained that it did not intend the *Conover* rule to be so rigidly applied that the function of the sentencing court would be restricted by forcing it to ignore factors relevant to the imposition of sentence. (*People v. Saldivar* (1986), 113 Ill. 2d 256.) Among the factors which the *Saldivar* court found relevant for the trial court's consideration are the nature and circumstances of the offense, including the nature and extent of each element of the offense as committed by defendant, and the degree of harm caused or threatened by defendant. 113 Ill. 2d 256, 268-69.

Applying the prescriptives set forth in *Saldivar* to the case at bar, we conclude that no error was committed in the sentencing process. It is our opinion that the court did not primarily focus on an aggravating factor which was implicit in the offense, but, rather, in arriving at its sentencing decision, properly considered the gravity of defendant's conduct as manifested in the manner in which the crime was committed, the force employed, and its effect upon his victims (see *People v. Saldivar* (1986), 113 Ill. 2d 256), as well as its impact upon society and the need to deter others. Accordingly, we find that although the sentences imposed are lengthy and that this court might have balanced the factors differently if the task of sentencing had been ours (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882), there is no indication that the trial court abused its discretion in setting the terms, and we thus have no basis on which to alter them (*People v. Younger* (1986), 112 Ill. 2d 422, 494 N.E.2d 145).

We therefore vacate that portion of the judgment relating to armed violence and affirm the judgment of the circuit court of Cook County in all other respects.

Judgment affirmed in part and vacated in part.

JOHNSON and McMORROW, JJ., concur.