NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (4th) 220437-U

NO. 4-22-0437

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 21, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Tazewell County |
| CORY D. PARKER, | ) | No. 17CF563 |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | Paul P. Gilfillan, |
| | ) | Judge Presiding. |

_____

JUSTICE CAVANAGH delivered the judgment of the court.
Presiding Justice DeArmond and Justice Lannerd concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court granted the Office of the State Appellate Defender's motion to withdraw as counsel and affirmed the trial court's judgment as no issue of arguable merit could be raised on appeal.

¶ 2    Defendant, Cory D. Parker, appeals the trial court's first-stage dismissal of his *pro se* petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)). This court appointed the Office of the State Appellate Defender (OSAD) to represent defendant. Thereafter, OSAD moved to withdraw as counsel, arguing defendant's appeal presents no potentially meritorious issues for review. We grant the motion and affirm the court's dismissal of defendant's postconviction petition.

¶ 3                              I. BACKGROUND

¶ 4    In December 2017, the State charged defendant with home invasion (720 ILCS 5/19-6(a)(3) (West 2016)) and armed robbery (*id.* § 18-2(a)(2)), both Class X felonies. On

February 5, 2018, defendant pleaded guilty to both charges under a fully negotiated plea agreement in exchange for concurrent sentences of 6 years' incarceration with 15-year gun enhancements on each charge, to be served at 50%, for a total sentence of 21 years.

¶ 5        At the guilty plea hearing, the trial court fully admonished defendant of the nature of the charges, the minimum and maximum sentences, and his right to plead not guilty, and it ascertained he understood the rights he was waiving. Defendant confirmed no one had threatened him or promised him anything other than what he had signed as part of the plea agreement. Defendant also confirmed he discussed the matter with his attorney, understood the plea agreement, and it was his desire to plead guilty and have the court approve the agreement.

¶ 6        The State gave the following factual basis for the plea. At approximately 3:04 a.m. on November 19, 2017, Tazewell County Sheriff's Deputy Hibbert was dispatched to 136 Fauber Lane, East Peoria, Illinois, on a report of a home invasion. A victim, Aaron Schroeder, stated he had been sitting in the living room of his residence with Richard Hill when he heard a knock at the front door and someone say, "[i]t's your boy." Schroeder opened the front door, and two black males, later identified as defendant and Marquis German, and a white male, later identified as Corie VanOppen, pushed their way into the residence. All three suspects were holding guns, and defendant and German were wearing bandannas on their faces. VanOppen was holding his arm up over his face, but Schroeder recognized him as his coworker.

¶ 7        Defendant and German held guns to the victims' heads and demanded their property. One of the black males removed the magazine from his handgun, showing that it was loaded with ammunition, and stated to the other two suspects he believed they should kill Schroeder and Hill. The men took Schroeder's cell phone, computer, headphones, Xbox console, $100 in cash, and Hill's cell phone. Hill gave the same statement to police as Schroeder.

¶ 8 While Hibbert was still at the scene, the East Peoria Police Department reported another home invasion at 116 North Hawthorne Avenue in East Peoria. VanOppen and his vehicle were located at the scene, and defendant and German were located at a nearby gas station. A loaded .45-caliber magazine was found in the front yard of 116 North Hawthorne Avenue and a .45-caliber handgun missing the magazine was found in a yard between 116 North Hawthorne Avenue and the gas station where defendant and German were located. The State provided additional facts concerning charges related to the home invasion at 116 North Hawthorne Avenue. Those charges are not at issue in this appeal.

¶ 9 Defendant, VanOppen, and German were interviewed by law enforcement. VanOppen stated he, German, and defendant went to Schroeder's house to buy cannabis. VanOppen knocked on the door and, when Schroeder opened the door, German and defendant pushed their way into the residence. VanOppen admitted they took electronics, cannabis, and cash from Schroeder's residence and said defendant had a handgun and threatened to kill Schroeder and Hill.

¶ 10 During the interview, German stated he, VanOppen, and defendant went to Schroeder's residence to purchase cannabis and that an argument broke out. Defendant produced a .45-caliber handgun, which belonged to VanOppen, and threatened to kill Schroeder and Hill. However, defendant told police he stayed in the car while VanOppen and German went into the residence and that German and VanOppen returned to the vehicle with electronics.

¶ 11 After the State concluded the factual basis, the trial court asked defendant if he believed the State could provide the witnesses to testify as set forth in the factual basis, and defendant replied "[y]es." The court again asked defendant if he was pleading guilty of his own free will, and defendant replied, "Yes." The court accepted the plea.

¶ 12         Defendant's counsel waived a presentence investigation (PSI) and hearing. The State pointed out there was a "Pretrial Services Criminal History" the State would rely on, and the trial court indicated it had reviewed the "criminal history in the file" and accepted the terms of the negotiated plea. In the order stating the terms of the plea agreement, the court specifically found defendant waived his right to a PSI, with both parties having agreed to the imposition of a specific sentence and the court having made a finding as to defendant's history of delinquency or criminality.

¶ 13         The trial court entered the agreed-upon sentence and fully admonished defendant of his appeal rights, including admonishing him of the need to file a motion to withdraw his guilty plea in order to appeal. Defendant did not file any posttrial motions. In March 2021, defendant moved to file a late notice of appeal, which the appellate court denied.

¶ 14         Defendant moved to file a late postconviction petition. The trial court dismissed the motion without prejudice, stating defendant did not need permission to file a postconviction petition. On April 14, 2022, defendant filed a *pro se* postconviction petition he labeled as a second successive petition, although it was his first postconviction petition.

¶ 15         Defendant's petition and supporting memorandum included multiple factual assertions and citations to legal boilerplate language with no explanation of its applicability. We agree with counsel's general interpretation of the petition as alleging the following: (1) defendant's counsel was ineffective for failing to investigate the evidence and sentencing statutes related to whether the crime caused great bodily harm and in coercing him to accept the plea; (2) his sentence violated the one-act, one-crime rule; (3) the State failed to prove applicability of the gun enhancement; (4) the trial court erred in failing to consider defendant's status as an emerging adult, when he was only 19 at the time of the offense; (5) the trial court

- 4 -

erred in failing to order a PSI; and (6) the appellate court erred when it denied defendant's late notice of appeal. Defendant attached multiple documents to the petition, including a police report in which German confessed to the police that he had the real firearm and defendant had a BB gun. Ultimately, defendant asked the court to vacate and amend his extended-term sentence.

¶ 16     On April 27, 2022, the trial court dismissed the petition as frivolous and patently without merit. The court found the claims were rebutted by the record, which reflected there was a fully negotiated plea agreement that defendant entered knowingly and voluntarily. The court noted defendant appeared to have second thoughts about his sentence and wanted it reduced, but the sentence was within the statutory range and he never filed a motion to withdraw his plea.

¶ 17     This appeal followed.

¶ 18                              II. ANALYSIS

¶ 19     OSAD moves to withdraw as counsel. Counsel for OSAD states she (1) read the record on appeal, (2) reviewed the facts and applicable law, and (3) discussed the case with another attorney. OSAD concludes an appeal in this case would be without arguable merit. We granted defendant leave until November 22, 2022 to file additional points and authorities. Defendant did not respond. For the following reasons, we agree with OSAD this appeal presents no nonfrivolous issues.

¶ 20     First, OSAD submits it would be frivolous to argue the trial court failed to comply with the procedural requirements of the Act when it dismissed the petition. OSAD then submits the underlying claims in the petition are frivolous and patently without merit.

¶ 21     The Act provides a remedy to criminal defendants who demonstrate a violation of their constitutional rights. 725 ILCS 5/122-1 *et seq.* (West 2020). At the first stage of a postconviction proceeding, the trial court must determine whether the petition is frivolous or

patently without merit. *Id.* § 122-2.1(a)(2). "[A] *pro se* petition seeking postconviction relief under the Act for a denial of constitutional rights may be summarily dismissed as frivolous or patently without merit only if the petition has no arguable basis either in law or in fact." *People v. Hodges*, 234 Ill. 2d 1, 11-12 (2009). A petition lacks an arguable factual basis when it is based on a fanciful factual allegation, such as one that is clearly baseless, fantastic, or delusional. *Id.* at 16-17. A petition lacks an arguable legal basis when it is based on an indisputably meritless legal theory, such as one that is completely contradicted by the record. *Id.* at 16.

¶ 22          At the first stage, the allegations in the petition, when taken as true and liberally construed, must present the gist of a constitutional claim. *People v. Hatter*, 2021 IL 125981, ¶ 24. "Thus, to survive summary dismissal, a petitioner is only required to include a limited amount of detail and need not present formal legal arguments or citations to legal authority." *Id.* "An allegation in a postconviction petition must be based on factual allegations and not mere conclusory statements." *People v. Ivy*, 313 Ill. App. 3d 1011, 1019 (2000). The petition must be both (1) verified by affidavit (725 ILCS 5/122-1(b) (West 2020)) and (2) supported by "affidavits, records, or other evidence supporting its allegations," or, if not available, the petition must explain why (725 ILCS 5/122-2 (West 2020)). *People v. Collins*, 202 Ill. 2d 59, 65 (2002). If a postconviction petition is found to be frivolous or patently without merit, a trial court may summarily dismiss it within 90 days of its filing. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). Our review of the first-stage dismissal of a postconviction petition is *de novo*. *People v. Dunlap*, 2011 IL App (4th) 100595, ¶ 20.

¶ 23          Here, OSAD notes the trial court dismissed the petition as frivolous and patently without merit within the 90-day period. OSAD next submits all underlying claims in the *pro se* postconviction petition are frivolous and patently without merit. We agree.

¶ 24                    A. Ineffective Assistance of Counsel

¶ 25         Defendant alleged his trial counsel was ineffective for failing to examine physical evidence, failing to visit the crime scene, and coercing him into pleading guilty because counsel should have been investigating viable defenses instead of using each jail visit to remind him of the plea offer. Defendant further alleged counsel failed to investigate whether the victims sustained great bodily harm and he contends this failure led to an improper determination of his sentence under his plea agreement.

¶ 26         Claims alleging ineffective assistance of trial counsel are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Hodges*, 234 Ill. 2d at 17. Under the *Strickland* standard, "a defendant must show both that counsel's performance 'fell below an objective standard of reasonableness' and that the deficient performance prejudiced the defense." *Id.* (quoting *Strickland*, 466 U.S. at 687-88). "At the first stage of postconviction proceedings under the Act, a petition alleging ineffective assistance may not be summarily dismissed if (i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced." *Id.*

¶ 27         "[T]he two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). In the context of a guilty plea, counsel's conduct is deficient under the *Strickland* test if the attorney failed to ensure that the defendant entered the plea voluntarily and intelligently. *People v. Brown*, 2016 IL App (4th) 140760, ¶ 23.

¶ 28         Here, defendant alleged trial counsel was ineffective for failing to examine physical evidence and visit the crime scene. However, nothing in the record establishes counsel

- 7 -

never made a visit to the crime scene, nor does defendant explain how a visit to the crime scene would have affected his plea. See *People v. Thompkins*, 161 Ill. 2d 148, 164 (1994).

¶ 29　　　　Defendant also suggested his plea was coerced. However, our review of the record shows the allegations of ineffective assistance made in defendant's *pro se* petition are refuted by defendant's responses to the trial court's questions at the guilty plea hearing. See *People v. Ramirez*, 162 Ill. 2d 235, 240 (1994).

¶ 30　　　　At the hearing, the trial court specifically asked defendant if he understood the terms of the agreement. The court confirmed defendant understood the plea, agreed with the factual basis, and wished to plead guilty. The record also reflects defendant specifically agreed trial counsel explained everything to him and acknowledged he freely and voluntarily entered into the plea agreement.

¶ 31　　　　Accordingly, we agree it would be frivolous for OSAD to argue trial counsel coerced defendant's plea or otherwise provided him ineffective assistance.

¶ 32　　　　　　B. Lack of a Finding of Great Bodily Harm at Sentencing

¶ 33　　　　Regarding sentencing, defendant's arguments focus primarily on his claim trial counsel was ineffective for failing to the investigate the facts and sentencing statutes concerning great bodily harm, and the corresponding lack of a finding that defendant's conduct "resulted in great bodily harm to a victim" within the meaning of section 5-4-1(c-1) of the Unified Code of Corrections (730 ILCS 5/5-4-1(c-1) (West 2016)) so as to require him to serve 85% of the sentence imposed (see *id.* § 3-6-3(a)(2)(iii)). Defendant also noted VanOppen and German were not required to serve their sentences at 85%. We agree with OSAD that defendant's sentencing claim lacks merit.

¶ 34        Defendant was sentenced within the statutory range. See 720 ILCS 5/19-6(a)(3), (c) (West 2016); *id.* § 18-2(a)(2), (b); 730 ILCS 5/5-4.5-25(a) (West 2016). Further, defendant was not charged with causing great bodily harm, nor was he sentenced to serve his prison term at 85%. Instead, his plea agreement specifically included day-for-day sentencing credit. Thus, as OSAD notes in the motion to withdraw, defendant's arguments concerning sentencing at 85% for offenses causing great bodily harm are irrelevant, as there was no reason for the trial court to make any such finding on the record during the guilty plea hearing.

¶ 35                        C. One-Act, One-Crime Rule

¶ 36        We agree with OSAD that the one-act, one-crime rule is inapplicable here.

¶ 37        In his petition, defendant appeared to allege his sentences for home invasion and armed robbery violated the one-act, one-crime rule. Under that principle, a criminal defendant may not be convicted of multiple offenses when those offenses are all based on precisely the same physical act. *People v. Coats*, 2018 IL 121926, ¶ 11. As charged here, home invasion involves entering the dwelling place of another when one or more persons are present and, while armed with a firearm, using force or threatening the imminent use of force upon any person or persons within the dwelling. 720 ILCS 5/19-6(a)(3) (West 2016). Armed robbery involves taking property by use or threat of force while carrying a firearm. *Id.* § 18-1(a); *id.* § 18-2(a)(2). In this case, defendant's convictions are not carved from the same act. Entering a home while armed with a firearm is a separate and distinct act from taking property while armed with the firearm. See *People v. King*, 66 Ill. 2d 551, 566 (1977) (stating an "act" is "any overt or outward manifestation which will support a different offense"). Thus, while there is overlap between the offenses, they are considered two separate crimes and acts. See *People v. Gagliani*, 251 Ill. App. 3d 1019, 1026 (1993) (holding convictions of home invasion and armed robbery did not violate

the one-act, one-crime rule); see generally *People v. Govednik*, 150 Ill. App. 3d 717, 724 (1986) (holding multiple convictions for residential burglary and home invasion did not violate one-act, one-crime principles). Thus, it would be frivolous to argue defendant's sentences for home invasion and armed robbery violated the one-act, one-crime rule.

¶ 38                                D. Gun Enhancement

¶ 39        We agree with OSAD there is no merit to defendant's argument the State failed to prove defendant was subject to a gun enhancement.

¶ 40        A factual basis for a guilty plea can be established by several means, including the State's summary of testimony and evidence which it would have presented at trial or a defendant's own admissions. *People v. Calva*, 256 Ill. App. 3d 865, 872 (1993). The trial court can accept the guilty plea where a factual basis exists, even where the defendant maintains he or she is innocent. *Id.* The quantum of evidence sufficient to establish a factual basis for guilty pleas is much less than proof beyond a reasonable doubt, which would be required at trial, and need not even reach a preponderance of the evidence. *Id.*

¶ 41        Here, the State gave a factual basis alleging both German and VanOppen stated defendant had a gun. Although defendant attached to his postconviction petition a police report in which German stated he had the real firearm and defendant had a BB gun, we agree with OSAD that this fact does not entitle defendant to relief.

¶ 42        First, as previously discussed, defendant heard, and agreed to, the factual basis given by the State supporting the fact he had a gun. Second, even if he carried a BB gun, defendant could have been found guilty under the theory of accountability, and thus he would still be subject to the mandatory gun enhancement. Once the prosecution demonstrates the defendant intentionally aided and facilitated the commission of the offense, then the defendant is

- 10 -

legally responsible under a theory of accountability for the crime. See *People v. Houston*, 258 Ill. App. 3d 364, 367-68 (1994). Indeed, a defendant may be held accountable for armed robbery even where he asserts that he was unaware his codefendant possessed a weapon. *People v. Bartlett*, 91 Ill. App. 3d 138, 141 (1980). Here, even if defendant held a BB gun, the record shows a gun was brandished at the crime scene by either German or VanOppen. Thus, defendant would have been guilty of the offenses under a theory of accountability. Accordingly, there is no merit to defendant's argument the State failed to prove he was subject to a gun enhancement.

¶ 43                                    E. Emerging-Adult Claim

¶ 44           We agree with OSAD there is no substantive merit to defendant's "emerging-adult claim" whereby he asserts that the trial court was required to consider his age at sentencing under *Miller v. Alabama*, 567 U.S. 460 (2012).

¶ 45           In his postconviction petition, defendant stated he was only age 19 at the time of the offense. However, our supreme court has held a juvenile who enters a fully negotiated guilty plea is precluded from raising a *Miller* claim challenging his sentence. *People v. Jones*, 2021 IL 126432, ¶ 28. Emerging-adult claims are an extension of claims under *Miller* to defendants between 18 and 21. See *People v. Harris*, 2018 IL 121932, ¶ 45. Thus, because a juvenile is precluded from raising a *Miller* claim after entering into a fully negotiated guilty plea, an emerging adult is likewise precluded from doing so.

¶ 46                                    F. Waiver of PSI

¶ 47           We agree with OSAD it would be frivolous to argue error based on the lack of a PSI.

¶ 48           While normally a defendant may not be sentenced for a felony before a PSI is considered by the trial court, the court need not order a PSI where both parties agree to the

imposition of a specific sentence, provided there is a finding made for the record as to the defendant's history of delinquency or criminality, including any previous sentence to a term of probation, periodic imprisonment, conditional discharge, or imprisonment. 730 ILCS 5/5-3-1 (West 2016).

¶ 49 Here, defendant specifically waived his right to a PSI. At that time, the State noted there was a "Pretrial Services Criminal History" it would rely on, and the court indicated it had reviewed the "criminal history in the file" and accepted the terms of the negotiated plea. In the order stating the terms of his plea agreement, the court specifically found defendant waived his right to a PSI, with both parties having agreed to the imposition of a specific sentence and the court having made a finding as to defendant's history of delinquency or criminality. Thus, defendant failed to show any error based on the lack of a PSI.

¶ 50                                G. Late Notice of Appeal

¶ 51 Finally, there is no error in the denial of the motion to file a late notice of appeal. The appellate court can allow a defendant to file a late notice of appeal within 30 days of the expiration of the appeal period if the defendant shows a reasonable excuse, or within 6 months of the expiration of the appeal period if the defendant shows a meritorious issue and a lack of culpable negligence. *People v. Ross*, 229 Ill. 2d 255, 263-64 (2008); Ill. S. Ct. R. 606(c) (eff. Mar. 12, 2021).

¶ 52 Here, the trial court entered its final judgment on February 5, 2018. No motions were filed in the 30 days following the judgment. The appeal period ended on March 7, 2018, with six months following that date being September 7, 2018. Defendant filed his late notice of appeal on March 24, 2021, well past that deadline. Thus, it would be frivolous for OSAD to argue the appellate court erred in denying his motion for leave to file a late notice of appeal.

¶ 53                                                III. CONCLUSION

¶ 54         For the reasons stated, we agree with OSAD there are no nonfrivolous matters to be raised on appeal. Accordingly, we grant OSAD's motion to withdraw as counsel and affirm the trial court's judgment.

¶ 55         Affirmed.